W. H. MERRILL v. WILLARD C. PIKE and Another.[1]

February 3, 1905.

Nos. 14,176, 14,177—(164).

**Master and Servant—Evidence.**

During the construction of a building the foreman directed a temporary floor to be laid for the purpose of furnishing a place for the workmen to stand on in adjusting posts, girders, and joists for the floor above. Plaintiff, a common laborer, was injured by falling through a hole in the floor while assisting in placing a floor joist.

*Held:* The evidence presented the following questions of fact, and the verdict of the jury is supported by the evidence:

1. That defendant was negligent in leaving the hole in the floor unguarded, and in not notifying the workmen of its existence.

2. Plaintiff was not guilty of contributory negligence in his method of handling the joist, and did not assume the risk of working upon the imperfect floor.

3. Plaintiff made settlement with defendants for $75, and executed a release of all claims against them, but the same was done while plaintiff was under the influence of intoxicants, and had no knowledge of the fact that he had executed such release until service of the answer in the case.

Action in the district court for Hennepin county to recover $20,900 for personal injuries. The case was tried before Willard R. Cray, J., and a jury, which rendered a verdict in favor of plaintiff for $2,000. Defendant moved for judgment notwithstanding the verdict or for a new trial, and from an order granting the motion for a new trial and denying the motion for judgment notwithstanding the verdict, plaintiff and defendants respectively appealed. Reversed on plaintiff's appeal and judgment ordered for plaintiff on the verdict, less $75. Affirmed on defendants' appeal.

*Welch, Hayne & Hubachek,* for plaintiff.
*Koon, Whelan & Bennett,* for defendants.

[1] Reported in 102 N. W. 393.

LEWIS, J.

Plaintiff was injured by falling through a hole in the second floor of a building where he was at work assisting in placing a joist for the third-story floor. The trial resulted in a verdict of $2,000 for plaintiff, and appeal was taken by defendants from an order of the court refusing their motion for judgment notwithstanding the verdict, and by plaintiff from the order granting a new trial.

1. The construction of the building was under the direction of a foreman. The second floor was made by laying two-inch planks upon joists permanently placed, and the object of this temporary floor was to provide a place to work on while setting up posts, girders, and joists for the floor above. While there was no attempt to make a permanent floor, there were no large or easily observed openings, except the hatchway for the raising of material, and possibly the hole through which plaintiff fell. It is admitted that plaintiff was not an experienced workman, but was employed as a common laborer or helper, having worked upon and about this building five or six weeks, principally in bringing material from the outside of the building and hoisting it to the proper place. Plaintiff admitted he had helped place the iron posts for the second floor, but denies having had anything to do with laying the floor. Upon the occasion of his injuries plaintiff was directed by the foreman to go, with three other men, on the second floor, and put in place a pile of joists that had been hoisted through the hatchway and piled upon the girders of the third floor. According to plaintiff's recital of the accident, he, with another man, remained on the second floor, while two men were upon the pile of joists on the third floor, it being the intention to put in position the first joist of a certain bent, one end upon the girder and the other upon the brick wall. In doing so they used a wooden horse, and in receiving the joist from the men above plaintiff and his fellow workman attempted to guide one end of it by means of boards, when the timber slipped and fell to the second floor, and, in order to avoid it, plaintiff jumped backward, and a little to one side, falling through a hole about three feet square.

Defendants' negligence in this case depends upon whether the floor in question, upon which plaintiff was working, was an instrumentality or place required by them to be in a reasonably safe condition. If plaintiff, in connection with the other workmen, was engaged in pursuing a

general enterprise, and assisted in laying the floor, then he cannot recover, for the reasons, first, that he would be constituted a fellow servant; and, second, that he would be presumed to have knowledge of the condition of the floor, and hence responsible for the same.  There is a sharp conflict in the testimony between plaintiff and the foreman on this point, and in disposing of this question we are obliged to assume that the jury accepted plaintiff's version of the story.  Plaintiff was not a carpenter, but only a common laborer, directed here and there to assist in handling heavy materials; and, if his explanation of the accident be accepted, he had a right to assume that the floor had been properly laid, and afforded reasonable safety to those directed to go upon it.  From this point of view, plaintiff was not required to accept the risk of falling through such hole upon the ground that it was one of the risks incident to his work.

It is true that not so high a degree of care will be exacted from a master in the construction of a building as is ordinarily required in the furnishing of a place or instrumentality for his laborers, but the work of construction may be so arranged and divided as to require the master to exercise the same degree of care as though the building or instrumentality had been completed.  As in this instance, if plaintiff took no part in the laying of the floor, had no knowledge of its exact condition, and it appeared to him, as he went upon it, to be perfectly safe, he was justified in assuming that the master had performed towards him the duty of seeing that the place he was called to go upon was reasonably safe for the purposes of his work.  The testimony does not disclose why the opening was left in the floor, and there is nothing to indicate that plaintiff had knowledge of it, or would have observed it in going to the place directed.  From the evidence upon this point we think it was a question for the jury to determine whether or not defendants were guilty of negligence in leaving the opening.  In this respect we think the case is governed by Bloomquist v. Chicago, M. & St. P. Ry. Co., 60 Minn. 426, 62 N. W. 818; Sims v. American Steel Barge Co., 56 Minn. 68, 57 N. W. 322; and is clearly distinguishable from the cases relied upon by appellants, Holloran v. Union, 133 Mo. 470, 35 S. W. 260; Beique v. Hosmer, 169 Mass. 541, 48 N. E. 338.  A case quite similar to the one now under consideration, wherein the master was held liable, is Johnson v. Tacoma, 22 Wash. 88, 60 Pac. 53.

2. The method adopted by plaintiff and his co-laborers in handling and adjusting the timber is not so inherently indicative of negligence as to charge plaintiff with contributory negligence. None of the men were trained builders, but were directed to do that particular work, and, if they used the means which to men of their experience appeared to be a proper method, it cannot be said, as a matter of law, that they were guilty of negligence simply because more experienced workmen would have adopted a different method. This, too, was a question of fact properly submitted to the jury.

3. As a defense it was alleged that in consideration of $75 plaintiff fully released defendants from all claims and liabilities growing out of the action. For reply to this defense plaintiff denied that he had compromised this claim for $75, and alleged that during the time the compromise is claimed to have been made and the release executed he had been addicted to the use of intoxicants in excess, and was wholly incapacitated for the transaction of any business, and that at the time of making the alleged settlement he was not able to comprehend the nature of any business transaction whatever, nor had he any knowledge that such compromise had been effected. He alleged further that while in such condition he had been given a sum of money by some insurance company for the payment of expenses connected with his illness, but that he was unable to remember or understand the nature of the transaction, and that the persons who paid him the money well knew of his unfit condition to comprehend the nature of the transaction. Evidence was introduced tending to show that while confined to the house on account of his injuries plaintiff was given stimulants, and, after getting about, that he was almost constantly under the influence of intoxicants. He denied any knowledge of having executed the release, but admitted that he may have received some money, claiming it to have been paid on account of expenses; and claimed that prior to the commencement of this action he had no knowledge of having executed a release.

On the other hand, there was evidence to the effect that at times, at least, he was in his rational mind, and during such periods admitted signing the contract of settlement for $75. We have examined this evidence, and are of the opinion that it was not of such decisive character as to require us to hold, as a matter of law, that plaintiff was in possession of his senses, and knew what he was doing, when executing the

release, or that he was afterwards informed of the fact, but retained the money, and did not repudiate the contract of settlement. While the evidence does not tend to show that defendants, or their representatives, the insurance agents, deliberately led plaintiff into a trap for the purpose of securing a release of his claim while in a weak state of mind, yet the evidence does indicate that they knew his condition, and had reasonable cause to believe him unfit for any business transaction. Under such circumstances, if true, the contract was voidable, though not void, and, conceding that plaintiff was required within reasonable time after discovery of the fact that he had signed away his right for $75 to repudiate such contract and return the money, yet the case was not tried nor submitted by defendants upon the theory that the evidence was contradictory and presented a question of fact for the determination of the jury. On the contrary, defendants submitted their cause upon the theory that it conclusively appeared, as a matter of law, that plaintiff knowingly and deliberately made the settlement and ratified the contract by retaining the money.

The trial court denied defendants' motion for judgment notwithstanding the verdict and granted its motion for a new trial, but failed to state upon what ground its order was placed. The evidence reasonably tends to support the verdict, and, unless errors appear in the rulings of the court or in the charge to the jury, the order granting a new trial must be reversed. Fitger v. Guthrie, 89 Minn. 330, 94 N. W. 888; Smith v. Minneapolis St. Ry. Co., 91 Minn. 239, 97 N. W. 881; Owens v. Savage, 93 Minn. 468, 101 N. W. 790. We are unable to find any errors in the record. The court did not specifically submit for the consideration of the jury the question whether or not the contract had been ratified; but no proper request was made upon that subject.

Plaintiff was not required to repudiate the contract nor return the money after being notified of the claim of settlement by service of the answer. Chicago v. Doyle, 18 Kan. 58. From the nature of the defense pleaded it is evident that defendants intended to hold plaintiff to the contract, if possible, and that they would have refused a tender of the money; and plaintiff was not required to do an unnecessary thing. The jury having sustained plaintiff's version of the contract of settlement, the amount paid—$75—should be deducted from the verdict. The trial court might have given this direction, but, having failed so to do, the verdict should be modified accordingly.

It is therefore ordered that the order denying defendants' motion for judgment notwithstanding the verdict be affirmed, and that its order granting a motion for a new trial be reversed, and the district court is directed to enter judgment for plaintiff against defendants for $1,925, and for his costs and disbursements.