### S. P. ERICKSON v. NORTHWEST PAPER COMPANY.[1]

June 30, 1905.

Nos. 14,417—(177).

**Death by Wrongful Act.**

In an action by the father of an infant son under sixteen years of age to recover for his death, resulting through the negligence of defendant to guard hazardous machinery in its pulp mill, where the evidence tended to show that the boy was caught in the disarranged belting of a shaft while the same was rapidly revolving, *held*:

1. That there was evidence tending to show that defendant was negligent in failing properly to guard and protect dangerous machinery in its mill, under the rule laid down in Perry v. Tozer, 90 Minn. 431.

2. That the evidence was also sufficient to support a finding that a release of defendant's damages signed by the father of the lad while prostrated with grief and sorrow over his son's death was obtained under such circumstances as constituted a legal fraud upon his rights.

Action in the district court for Carlton county by plaintiff as administrator of the estate of Oscar Erickson, an infant, deceased, to recover $5,000 for the death of intestate.. The case was tried before Ensign, J., and a jury, which rendered a verdict in favor of plaintiff for $2,000. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, but reducing the verdict to $1,725, defendant appealed. Affirmed.

*Miller & Clapp,* for appellant.

*Jno. Jenswold, Jr.,* for respondent.

LOVELY, J.[2]

This is an action by a parent to recover for the death of his son, a lad of fourteen years, resulting from injuries through the alleged failure of defendant to protect the machinery in its pulp mill at Cloquet. There was a verdict for plaintiff, and a motion for a new trial, or judgment .in the alternative, which was overruled. From this order defendant appeals.

[1] Reported in 104 N. W. 291.     [2] START, C. J., absent, did not sit.

Under the view which we have reached, it is unnecessary to state at length the details of the accident whereby the boy lost his life. Suffice it to say that his employment required him to stand on a slippery platform in the pulp mill of defendant, and with a scraper clean screens at the bottom of a vat. Some eight inches above and back of the boy's head was a revolving shaft, unprotected, and without the guards required by statute. This shaft operated at the rate of about one hundred thirty revolutions per minute. A belting was run upon the shaft in order to propel a grindstone below the plank where the boy stood. While the lad was at work at the time of the injury the belt became detached, was twisted around the shaft, and fell suspended therefrom in a loop. Another operative's testimony tended to show that the intestate was standing on the plank, the flapping loop caught his arm, he was pulled upon the shaft, and received such serious injuries that he died immediately therefrom. Under proper instructions from the trial court, it was left to the jury to determine whether defendant was negligent in guarding its machinery, whereby an infant under sixteen years of age was imperiled and killed by reason of its omissions, and the verdict is sufficiently supported by the evidence in this respect, under the rule laid down in Perry v. Tozer, 90 Minn. 431, 97 N. W. 137.

The principal and troublesome question involved in this case was, however, upon the claim of settlement between the contesting parties. In the answer defendant pleaded a release setting forth that for $275 defendant was acquitted of all damages by reason of the negligence complained of. The issue thus presented was met by plaintiff in reply, under the allegation that the money was received as a voluntary gratuity from defendant, to aid the father in paying the expenses of the funeral of his deceased son, and the expenses of his family in attending the same; that plaintiff accepted the donation, whereupon a paper was produced, with the accompanying verbal statement that it was a receipt for the money which was donated, and a request that plaintiff sign the same as evidence thereof, whereupon plaintiff, who was unable to read or write English, relied upon the representation thus made, and signed the paper, which was a release of all damages, and did not until several weeks thereafter understand the nature of the instrument he executed.

The testimony tended to show that the father of the lad was a man of mature years, but a foreigner, unable to read the release, which was in English, and his signature was affixed in the belief that it was a mere acknowledgement of the money. Evidence also tended to show that a short time prior to the sad accident plaintiff had lost six of his ten children. On the date of the accident the mangled remains of this son were taken to the undertaker's, and plaintiff notified of this fact. That plaintiff was very much disturbed by his grief, which was the culmination of many troubles. Other of his children ·were buried at Washburn, Wisconsin, and his natural desire, as well as that of his wife, was to place this child, who was a special favorite, in the cemetery where the other children were interred; but he was very poor, and without pecuniary means to do so. Another son, Peter, prevailed upon plaintiff to go to the office of defendant company at the request of its representatives. When there, the agents of defendant expressed their sympathy for plaintiff and professed a wish to do what they could to alleviate his sorrow, also to pay the expenses of the burial and of the trip of the family and remains to Washburn as a gratuity, which plaintiff accepted, with full confidence that there was no other motive than to assuage his sorrow and that of his family. This was natural, for under such circumstances human nature accepts proffers of such sympathy and friendship, unquestioned or without suspicion. An attorney of defendant was present when figures as to expenses were made, which showed that a liberal allowance would be $275, and this sum was inserted in the release. Plaintiff had no attorney, did not know what the arrangement was, and believed the statement that the paper was a mere receipt, according to evidence received.

There was testimony tending to show that plaintiff, to support his troubles, had drank intoxicants. This may have been improper, but it is not unusual under such circumstances. The learned trial court struck out the testimony tending to show the effect of stimulants upon the mind of plaintiff, which we think was error. Merrill v. Pike, 94 Minn. 186, 102 N. W. 393. We must therefore omit any inference to be drawn from this testimony in our review of the evidence, but we are satisfied from the whole record that it was fairly within the

judgment of the jury to say that the influence which affected the plaintiff, grief, rendered him incompetent to understand or appreciate the nature of his act in the execution of the release, and that his incapacity in this respect furnished an advantage to defendant of which it availed itself. The evidence shows that this condition must have been understood by those who obtained the release, and whether or not a fraud upon him was committed, the legal effect was tantamount thereto, and the advantages that were thus obtained cannot, upon the verdict, be retained. A deliberate agreement for a compromise must be upheld by the courts, but we think the learned trial court was justified in submitting to the jury upon the whole evidence the question whether plaintiff in this case understood the nature and effect of his act. The circumstances were such that the jury may have been justified in believing the professions of the representatives of defendant that they sympathized with plaintiff and would make him a present, which was believed, and that all they desired was a receipt for the money to justify them in accounting for the same to defendant; if so, it would not be improbable either that through the mental suffering of the father he did not anticipate that any legal rights of his for his son's injury were being considered or acted upon. To uphold such a settlement thus made as a matter of law, would, in our judgment, be a palpable injustice which we cannot sanction.

We find no further errors worthy of specific notice and are satisfied that, whether it was or not error for the court to require a reduction of the verdict to the extent of the amount received at the office, no prejudice resulted from this order, which was accepted.

Order appealed from is affirmed.