FRANK SUNDVALL v. INTERSTATE IRON COMPANY.[1]

June 26, 1908.

Nos. 15,596—(121).

**Negligence—Questions for the Jury.**

In a personal injury action it is *held* that the evidence was sufficient to take the case to the jury upon the question of defendant's negligence, the contributory negligence of the plaintiff, and whether he assumed the dangers and risks incident to his employment.

**Execution of Release.**

*Held*, further, that the question whether a release of plaintiff's cause of action was signed and executed by him through inadvertence and mistake, and without knowledge of its contents, was an issue made by the reply and properly submitted to the jury.

Action in the district court for St. Louis county to recover $25,-520 for personal injuries sustained by plaintiff while in the employ of defendant as a switch tender in its mine. The case was tried before Dibell, J., and a jury which rendered a verdict in favor of plaintiff for $3,999. Defendant moved for judgment notwithstanding the verdict or for a new trial. The motion for judgment was denied and that for a new trial was granted unless plaintiff would consent to a reduction of his verdict to $3,877.50. From this order defendant appealed. Affirmed.

In addition to what is stated in the opinion, the reply alleged that plaintiff had never received any consideration or sum of money from defendant, or any other person in settlement of the claim of damages set up in the complaint.

Defendant's special request for instructions mentioned in the opinion was as follows:

A mistake of the witness Moilan [the interpreter who accompanied plaintiff when the latter signed the receipt] as to whether the paper was a receipt or release does not furnish any ground for setting aside

[1] Reported in 116 N. W. 1118.

the release, if such mistake was not induced by any fault or misrepresentation on the part of the defendant's officers or agents.

*Davis & Hollister,* for appellant.

*Miller & Clapp,* for respondent.

BROWN, J.

The facts in this case are as follows:

Defendant is the owner of an iron mine, from which large quantities of ore are taken by means of the equipment usually connected with and necessary to the operation of such enterprises. Defendant maintained at the one hundred foot level of its mine a tram railway track on which tram cars were operated from various parts thereof to the shaft where the ore was elevated to the surface. The track consisted of one main and numerous side tracks leading therefrom to the various drifts in the mine. The cars were taken to these drifts, loaded, and returned to the shaft by an electric motor operated by means of an electric wire and trolley pole attached, which was usually run at a speed of five or six miles per hour. The side tracks were connected with the main track by means of switches operated in the usual way. The motor car was equipped at one end with a running board a short distance from the ground, upon which employees stood while the car was in motion, and on which they stepped in getting onto the car. This board extended the entire width of the car, but the base board along the back side thereof did not cover the entire width, but left an opening of about nine inches on each end, through which a person's foot might slip when stepping upon the running board. Plaintiff was in the employ of defendant as a switch tender; his duties being to turn and set the switches whenever necessary to enable the motorman to proceed to any desired part of the mine. At the point where the switch involved in this action connects with the main track the rails thereof projected about an inch above the rails of the main track, so that, whenever the motor car passed over the same and onto this side track, it would jump or jerk as it encountered this obstacle or defect. That this was a defect in the track is clear, and the evidence tends to show that it had existed for some time, and that defendant had been informed of the fact, but made no effort to remedy or repair it.

On the occasion of the accident of which plaintiff complains, plaintiff in the performance of his duties turned the switch to permit the motor with attached cars to pass upon this particular side track. When the approaching motor reached the point where plaintiff awaited it, running at the usual speed, he stepped upon the running board according to the general custom, and by reason as he claims of the jump or jerk as it passed upon the projecting side track rails, his foot slipped and passed through the opening at the back of the running board, causing him to fall to the ground and the car to pass over his right leg, mangling it to such an extent as to render amputation necessary. He brought this action for damages, basing his right of recovery upon the alleged negligence of defendant in maintaining the switch track in the defective condition, solely by reason of which, together with other acts of negligence referred to in the complaint, not necessary to here mention, his injury was caused. He had a verdict in the court below, and defendant appealed from an order denying its alternative motion for judgment or a new trial.

Our examination of the record leads to the conclusion that the evidence was sufficient to take the case to the jury on the question of defendant's negligence, and we come at once to defendant's contention that plaintiff was not entitled to a verdict, notwithstanding its negligence. It is contended in this behalf that the evidence is insufficient to justify a verdict for plaintiff, and that defendant's motion for a directed verdict or judgment notwithstanding the verdict should have been granted, for the reasons (1) that plaintiff's contributory negligence conclusively appears, and (2) that all the risks and dangers incident to his employment, including those arising from the defect in the track, were known to, and understood and fully appreciated by, plaintiff. We are of opinion that both these questions were properly submitted to the jury.

The contention that plaintiff was guilty of contributory negligence because, after turning the switch for the approaching car, he took a position in the center of the track preparatory to getting onto the car when it reached him, thus in a measure subjecting himself to just such an injury as he received, cannot be sustained as a matter of law. The evidence tends to show that he pursued the usual custom, and it does not conclusively appear that he would not have been injured

had he stood upon the side of the track and attempted to board the car from that position. It was for the jury to say whether his conduct was negligent. Nor does it conclusively appear that he well understood and appreciated the risks and dangers of his situation with respect to the defect in the track. He was at the time under twenty one years of age, with little previous experience in this kind of work —an ordinary laborer, with no knowledge of railroad work prior to his experience with defendant's tram car road. Though he did know that the track was defective in the respect stated, no accident of this kind had ever before occurred to his knowledge, and whether he should have anticipated that one might occur and the extent of the dangers of his employment were fair questions for the jury to determine. Hendrickson v. Ash, 99 Minn. 417, 109 N. W. 830; Atlas v. National Biscuit Co., 100 Minn. 30, 110 N. W. 250. It is true, of course, that where a servant has two methods of performing his work, one safe and the other unsafe, and he adopts the latter and is injured, no recovery can be had. But the jury were not required by the evidence to find that plaintiff was so confronted in this employment. On the other hand, it clearly appears that he followed the usual and customary method in boarding the car.

2. Defendant interposed in defense that prior to the commencement of the action the parties fully settled and adjusted plaintiff's claim for damages, and that for a valuable consideration plaintiff released and discharged defendant from further liability therefor. This was denied by the reply; plaintiff alleging that if any release was ever executed by him it was a mistake, and with no intention of releasing or discharging defendant, and, further, that the release was obtained from him by fraud and fraudulent representations. On the trial a written release was offered and received in evidence, by which it appears that in consideration of $116, one-half of which was paid by defendant, the balance being paid by donations raised by defendant's employees to aid disabled workmen, called in the record "club money," plaintiff released and discharged defendant from all further liability for his injuries.

The court charged the jury that there was no evidence sufficient to justify the conclusion that the release was obtained by fraud or fraudulent representations, but if they found that plaintiff did not

know the contents of the writing, or its effect, and without fault or negligence was misled into signing it, thinking it was a receipt for money to which he was entitled, and not a release of his claim against defendant, he was not bound by it. Of this part of the charge defendant complains, principally on the contention that the question thus submitted to the jury was not an issue under the pleadings; it being insisted that the reply raised, as respects the release, the question of fraud only. We do not concur in defendant's construction of the reply. Fairly construed, it sustains the view of the learned trial court, and presented two questions concerning the release: (1) Whether it was signed by plaintiff by mistake and inadvertence, and without a knowledge of its tenor or effect; and (2) whether it was obtained by fraud. The reply alleges in subdivision 4 that at the time the release was signed plaintiff applied to one of defendant's officers for money he supposed due him from the club subscriptions, which were collected by the company and paid out by its officers, and understood that the money received by him came from that fund, and that the release was a receipt therefor, and nothing more; that he was unable to read or write the English language, and did not and could not read the paper, and relied upon certain statements made to him to the effect that it was a receipt. It further expressly charges in the fifth subdivision fraud and fraudulent representations. We are clear that the defense of mistake and inadvertence was admissible under the fourth paragraph of the reply, and there was, therefore, no error in submitting it to the jury.

3. It is further claimed that the release was signed by plaintiff with full knowledge of its contents and effect, and that the evidence wholly fails to sustain the claim that it was an inadvertence or mistake. In our view of the evidence, this was a question of fact for the jury. Plaintiff received a serious injury, the loss of his right leg. If defendant's actionable negligence caused that injury, it was liable for substantial damages. The sum of $58 paid by it would, in comparison with the injury, be a mere pittance, and we are not warranted in assuming that plaintiff intentionally relinquished a substantial right for that sum of money; and, while the burden was upon him to overcome the written contract, we think the evidence, fairly construed, justified the conclusion of the jury. The evidence furnishes no sug-

gestion that at the time the release was signed the parties deliberately canvassed and considered their respective rights and liabilities, no intimation that they discussed the question of defendant's liability, and, if liable, the nature and extent of plaintiff's injury and the amount necessary to compensate him therefor. It does not appear that these matters were considered at all.

The most the record shows is that the payment was made and the release signed. Plaintiff could not read or understand our language, and all negotiations looking to the release were had by him through an interpreter, and whether that person correctly informed him of what the writing contained and its effect on his claim against the company was a vital matter for the jury to consider. The evidence is not conclusive that it was correctly explained to him. Merrill v. Pike, 94 Minn. 186, 102 N. W. 393; Erickson v. Northwest Paper Co., 95 Minn. 356, 104 N. W. 291; Christianson v. Chicago, St. P., M. & O. Ry. Co., 61 Minn. 253, 63 N. W. 639; Schus v. Powers-Simpson Co., 85 Minn. 447, 89 N. W. 68, 69 L. R. A. 887. Defendant's special request, the refusal of which is made the basis of the fourth assignment of error, was substantially given in the general charge.

We have fully considered all the assignments not involved in the foregoing, with the result that no prejudicial error is disclosed. The refusal to give certain of defendant's requests for instructions was not error, for the subject-matter thereof, so far as proper to be given, was fully covered by the general charge.

Order affirmed.