## HELMER CARLSON v. JAMES T. ELWELL.[1]

February 19, 1915.

Nos. 18,982—(207).

**Release — evidence.**

Evidence considered and *held* not sufficient to warrant submitting to the jury the question whether plaintiff was mentally incompetent, or did not know what he was doing, when he received money paid by the defendant in settlement of his claim for personal injuries and executed a release.

Action in the district court for Hennepin county to recover $40,000 for personal injuries. The case was tried before Leary, J., who when plaintiff rested denied defendant's motion to dismiss the action, and a jury which returned a verdict in favor of plaintiff for $15,000. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed and judgment for defendant ordered.

*David F. Simpson, George S. Grimes* and *Gordon Grimes,* for appellant.

*Olof L. Bruce, William A. Tautges* and *Brooks & Jamison,* for respondent.

BUNN, J.

This action to recover for personal injuries resulted in a verdict for the plaintiff. Defendant appeals from an order denying his motion in the alternative for judgment notwithstanding the verdict or for a new trial.

[1] Reported in 151 N. W. 188.

In January, 1910, defendant was the owner of a lot at the corner of Fifth street and First avenue in Minneapolis. He decided to erect a building thereon. Plaintiff was a workman employed in the work of excavating. Whether the work was done by defendant or by an independent contractor, whether plaintiff was in defendant's employ, or in the employ of an independent contractor, is one of the questions in the case. Plaintiff was employed about February 8, 1910, and worked with other men in shoveling dirt into wagons in the excavation. He was injured February 14, 1910, while working near the Fifth street side of the excavation, by a heavy, frozen chunk of earth that fell out of the bank at the top and down to the bottom of the excavation. Whether there was evidence tending to show negligence on the part of defendant, and whether plaintiff assumed the risk, are questions that were involved on the trial and argued here. Plaintiff's injuries were undoubtedly serious. When he was extricated from under the frozen earth he was taken to the City Hospital, where an operation was performed. He was delirious for several weeks after this, had a high fever and septic poisoning. After the accident and in the month of February Ayres & McDonald, Minneapolis lawyers, secured a contract from plaintiff to take his case on a 50 per cent contingent fee. On May 11, 1910, Mr. Clinite, a lawyer then in the office of Ayres & McDonald, visited the plaintiff at the hospital and procured his signature to the contract. Clinite testified that on this occasion plaintiff talked about the case, giving the names of witnesses. Clinite then took charge of the claim. He visited plaintiff several times and in these conferences and in conversations with him over the telephone, he and plaintiff discussed the facts in the case and the progress of the investigations made. Clinite testified that plaintiff said he wanted to get his claim settled, and asked him to find out how much the defendant would give. Clinite then saw defendant, who refused to pay anything, claiming that plaintiff was not in his employ and that he was not liable. After several visits to defendant he succeeded in getting an offer of $100. This offer was submitted to the plaintiff, who instructed Clinite to take $200 if defendant would give it. After several efforts to get defendant to pay more, he finally agreed to give $400 in settlement of the claim.

Clinite reported this offer to plaintiff and, though he advised against its acceptance, plaintiff was anxious to make the settlement and accepted the offer. A few days later and on July 25, 1910, Clinite and the defendant met the plaintiff at the hospital. Defendant paid plaintiff $400 in bills; plaintiff counted the money and signed a written release which had been prepared by Clinite and the terms and effect of which were explained to plaintiff. Defendant then left and plaintiff paid to Clinite $200 of the money, retaining the balance himself. Such is the substance of the testimony of Clinite, supported by that of defendant and that of Mr. Cutler, an employee in the office of Ayres & McDonald. It is in no way contradicted, except by the testimony of plaintiff that he did not remember any such transaction.

Three main questions were argued by counsel. Two of them have been stated; i. e., the question whether plaintiff at the time of his injury was in the employ of defendant or in the employ of an independent contractor, and the question whether there was evidence of negligence. The third question and the one that must be decided in plaintiff's favor, in order that he may have any standing in the case, concerns the validity of the settlement and release. Unless this be set aside, plaintiff is precluded by it, and the other questions become immaterial.

No fraud in the settlement is shown or seriously claimed. The sole ground for avoiding it is the claim that plaintiff was at the time mentally incapable of understanding the transaction, and did not in fact know what he was doing. We say this advisedly, not overlooking the argument of inadequacy and other considerations. It is very clear that Clinite represented plaintiff and that defendant, so far from making any effort to secure a settlement, insisted that he was not liable at all. He was only induced to offer the $400 after repeated attempts of Clinite to induce him to pay something. The amount was inadequate, it is true, if the liability was at all clear. But it was very far from clear that plaintiff was in defendant's employ at all or that there had been any negligence in doing the work. These questions are even now, after exhaustive efforts of counsel, at least doubtful ones. It is therefore plainly correct to

say that the settlement must stand, unless the evidence justified the jury in finding that plaintiff's mental condition at the time was such that a contract with him was absolutely void.

The inquiry must therefore be directed to the mental condition of plaintiff on July 25, 1910, when the settlement was made and the release executed. We have referred sufficiently to the testimony of Clinite, of defendant and of Cutler. There can be no doubt that their evidence, if true, shows that plaintiff understood exactly what he was doing. Physically he was then in a very serious condition, but this is by no means inconsistent with soundness of mind. On July 25, plaintiff's temperature was 97½ in the morning and reached 100 late in the afternoon. He was in bed on the porch of the hospital. The witness McKenna was a patient at the hospital from March to September, 1910, and during most of this time had a bed next to plaintiff's. He testified to frequent talks with plaintiff, to his reading the papers, discussing the facts in his case, and the settlement made, all in a sane and normal way. Dr. Petit was an interne at the hospital, and was in charge of plaintiff from May 15 to September 15. He saw and talked with him daily. He testified that plaintiff talked fair English, and answered questions intelligently, though he seemed to lack education and appeared to be dull. Dr. Byrnes was an attending surgeon at the hospital, and plaintiff was under his care from July first. He performed an operation on July 18, to which he obtained plaintiff's consent. He testified that plaintiff did not talk much, was very quiet, appeared not to care whether anything was done for him, but that he was not delirious, apparently understood what was going on around him and answered questions intelligently. Dr. Collins was the superintendent of the hospital; he testified that plaintiff was irrational at times during the winter and spring, but that at other times he was rational and intelligent. This is all of the testimony that relates to plaintiff's mental condition at or about the date of the settlement, except the evidence of plaintiff himself. We will briefly review his testimony, as manifestly the verdict, if it can be sustained at all, must rest on the testimony of plaintiff himself.

He remembered being taken to the hospital and being placed on the

operating. table, but claimed to remember nothing else until the middle of May, when he recalls being moved to the porch. From this time to July 18, he realized his condition and his surroundings, and was able to describe both; his memory was apparently good, except as to anything in regard to the visits of Clinite, or any talks with him or anybody about his claim. The operation of July 18 was to remove an accumulation of pus; plaintiff remembered this operation, and the fact that he did not take an anesthetic. The doctors testified that this operation relieved plaintiff—lessened his fever—but plaintiff claims to have lost consciousness again and to remember nothing else until after an operation in September. He testified that he did not remember ever seeing Clinite, any talk about his claim, or anything at all about executing the release or receiving the money. There is no possible doubt that he did execute the release and receive the money, and his evidence goes only to his memory of these things. Some time after the settlement (just when does not appear), plaintiff, according to his testimony, discovered under his pillow a purse containing two hundred dollars in bills. He had no idea how it got there and intrusted it to a friend for safe keeping. The friend made some investigation, and in September informed plaintiff that the money had been placed under his pillow by defendant. Later in the fall the friend returned the money to plaintiff, who kept it in the City Hospital during the rest of his stay there and took it with him when he left for another hospital about the first of the year. He was in this hospital until spring when he was discharged and went to school for a time, using the two hundred dollars for expenses. He never attempted to see defendant or made any further inquiries as to how the money came or why. Dr. Collins testified that plaintiff applied to him for employment in the spring of 1912, which plaintiff admits, and that plaintiff then said that he had settled his claim for damages for four or five hundred dollars, of which he had got half. This plaintiff does not remember. This action was commenced in March, 1913, nearly three years after the settlement, and two and a half years after plaintiff, on his own evidence, knew that the money had come from defendant.

We see no escape from the conclusion that the evidence is wholly insufficient to justify a jury in finding that plaintiff was mentally incompetent or did not understand what he was doing when he received the money and signed the release on July 25, 1910. Instead of being clear and convincing, the evidence to avoid this written instrument is wholly plaintiff's "I don't remember" repeated in various forms. Opposed to this is the testimony of many wholly disinterested witnesses, physicians, lawyers and laymen. The same may be said of plaintiff's claim that he did not understand English. It is so opposed to the overwhelming weight of the evidence that it cannot be given credence.

As we have said, the evidence wholly fails to show fraud. The liability of defendant was very doubtful; the negotiations for a settlement were begun by the attorneys of the plaintiff and the settlement agreed to by the defendant only after their repeated efforts. Under these circumstances mere inadequacy is not a badge of fraud, or alone ground for avoiding the settlement. In each of the cases relied on by plaintiff there was either evidence of fraud or satisfactory proof that the injured person was unable to understand what he was doing. Schus v. Powers-Simpson Co. 85 Minn. 447, 89 N. W. 68, 69 L.R.A. 887; Sundvall v. Interstate Iron Co. 104 Minn. 499, 116 N. W. 1118; Marple v. Minneapolis & St. L. R. Co. 115 Minn. 262, 132 N. W. 333; Petterson v. Butler Bros. 123 Minn. 516, 144 N. W. 407. The case at bar comes within the well understood rule that the testimony must be clear and convincing in order to set aside a written release. The evidence is so far from clear, so unconvincing, so wholly unsatisfactory, that we are obliged to hold that it was error to submit this issue to the jury. Judgment should have been ordered for the defendant. It is manifest that plaintiff can make no better case, that the evidence can never be more satisfactory. In view of the overwhelming evidence contradicting his claim of not remembering anything pertaining to a settlement and the failure to repudiate it until long after he had learned where the money came from and had spent it, it is a case where the litigation should be ended.

Order reversed and judgment for defendant ordered.