# IRA L. BINGHAM v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY AND ANOTHER.[1]

March 11, 1921.

No. 21,990.

**Release—avoidance on ground of mutual mistake.**

1. To avoid a release of a claim for damages for personal injuries on the ground of a mutual mistake of fact, the mistake must be pleaded.

**Sufficient evidence for finding of misrepresentation.**

2. The evidence referred to in the opinion would justify a jury in finding that a release of damages for personal injuries was procured by misrepresenting their nature and extent and that, although the representations were made in good faith with no intention to deceive, plaintiff, in executing the release, was in fact misled into believing that injuries of a serious and lasting nature were merely trivial and temporary. It would also justify a finding that the statements which induced him to execute the release were not mere expressions of opinion.

**Error to direct verdict for defendant.**

3. The court erred in directing a verdict for defendant on the ground that a release so obtained was a bar to an action to recover for such injuries.

Action in the district court for Ramsey county to recover $12,000 special and $40,000 general damages for injuries received while brakeman in defendant's employ. The substance of the pleadings will be found in the second paragraph of the opinion. The case was tried before Olin B. Lewis J., who at the close of the testimony granted defendants' motion for a directed verdict. Plaintiff's motion for a new trial was denied. From the order directing the jury to return a verdict, plaintiff appealed. Reversed.

*A. A. Tenner,* for appellant.

*F. W. Root* and *Colin W. Wright,* for respondents.

[1]Reported in 181 N. W. 845.

LEES, C.

Plaintiff, a freight brakeman running between Minneapolis and La Crosse, fell from the side ladder of a moving car of his train on the evening of February 7, 1918, in the yards at St. Paul. He brought this action in May, 1919, to recover damages for his injuries.

The complaint charged defendant with negligence, alleging that a rung in the ladder was insecure and pulled loose, causing plaintiff to fall to the ground and injure his back seriously and permanently. The answer pleaded a full settlement and release as a bar to the action. The reply alleged that plaintiff had submitted himself for treatment for his injuries to the company's physicians, who informed him that the injuries were trivial and temporary, although in fact they were serious and permanent, as was known or should have been known to the doctors. It alleged that, when the settlement pleaded in the answer was made, defendant's claim agent informed plaintiff that the doctors had reported that he would be able to work in a day or two and were about to discharge him as entirely recovered; that plaintiff relied on these representations and, without knowing the nature or extent of his injuries, accepted $75 for time lost and signed what he supposed was a receipt therefor. It concluded with an offer to deduct the money he had been paid from the amount of the verdict, if it was in plaintiff's favor. When the evidence was all in, defendant moved for a directed verdict. The motion was granted, on the ground that the release was a bar. Plaintiff's motion for a new trial was denied, and the case is brought here on appeal from the judgment subsequently entered.

The sole question presented is whether there was evidence requiring the submission to the jury of the issue respecting the validity of the release. There was evidence which tended to show the following state of facts: For the first 9 days after he was hurt plaintiff continued to work. On February 16 he called on the company's physicians for treatment. He was suffering considerable pain. He told them he had been injured and of the pain he had in his back. They examined him, informed him that his injuries were of a temporary nature and advised him to continue to make hot applications to his back and to stay at home and rest. He did as they advised, but did not improve. Between February 16 and March 16 (the date of the settlement), he called on them several times. They

continued to assure him that his injuries were not serious. At their suggestion, X-ray pictures of his back were taken, and he was examined by another physician, who reported that no evidence of injury to the bones or joints was apparent. The doctors finally advised him to go to the claim agent and arrange to return to work, telling him the soreness in his back would work out gradually. We quote plaintiff's testimony:

"He (the doctor) says there is nothing serious about it, nothing more than a football player would get * * * a bump * * * You * * * go to work and that would work out. * * * I have reported you for work. Go down to see Mr. Alterton."

He did as they advised. He had one or more interviews with the claim agent before the settlement was made, informing him that the doctor had told him to report for work, but that he (plaintiff) did not think he was in condition to work. The claim agent replied that the doctor, with his experience and study, ought to know best. At their last interview, plaintiff's loss of earnings was reckoned up and $75 determined upon as the amount he had lost.

The release was prepared in triplicate and presented to him for signature. He said he would sign a release to go to work, although he thought he was in no condition for work, and the claim agent replied: "You can sign up * * * and if you ain't able to work * * * we will look out for you." Plaintiff then signed the release and received a draft for $75. He could read, and at the bottom of each release there was a printed statement to the effect that he had read and understood the release. He affixed his signature to this statement as well as to each release. The release specifically covered all claims, present and future, on account of the personal injuries he received on February 7. The draft contained a statement that it was received in payment of his claim for such injuries. He indorsed and cashed in on the day the settlement was made. He took one of the releases with him and kept it for a considerable time. On June 15, 1918, he wrote a letter to the company's general adjuster, asking for back pay he claimed, saying: "I was paid at the rate of $2.78 a day from February 7, 1918, to March 23, 1918, on account of personal injuries which I received while working as freight brakeman for C. M. & St. P. Ry. Co. near St. Paul."

One of the company's physicians testified that when plaintiff consulted

them the last time they advised him to return to work and that the soreness of which he complained would work out of his back. The claim agent denied much of plaintiff's testimony, but on his cross-examination, when asked what the settlement covered, he answered: "It was a settlement for time lost on account of disability arising from the injuries that he sustained." On his redirect examination he corrected this answer as follows: "Well, my answer would be * * * to pay them for the injury as well as the lost time."

Plaintiff returned to work on March 20, 1918, and continued until the end of March, 1919. He worked as a rear brakeman as he had done before he was injured, except that his conductor relieved him from such work as required much physical exertion. His earnings were equal to those for the same period before his injury. He continued to suffer more or less pain, his condition gradually growing worse until finally he was compelled to give up his job, and soon after brought this action. There was evidence tending to show that he sustained an injury to the sacro-iliac joint which unfits him for manual labor and has disabled him from following his former occupation.

The evidence also tends to show that, when the settlement was made, neither he nor the physicians knew that his injury was serious or that its effects would be lasting. The evidence would not justify a jury in finding that the physicians or claim agent entertained any intention of deceiving plaintiff. It would justify the conclusion that the physicians were mistaken in their assumption that he was not badly hurt and that his injury had resulted only in muscular soreness which would disappear when he returned to work. The evidence shows that plaintiff relied on the representations made by the physicians and would not have executed the release but for his reliance thereon. It is true that he was inclined to doubt the correctness of their conclusions and so informed the claim agent, who, according to plaintiff's testimony, convinced him that he should rely on their experience and superior knowledge rather than on his own feelings. In the end his doubts were overcome. In settling with him, there was no pretense of paying him for anything but lost time. It is evident that he was content to settle on that basis, because he had been led to believe that the net result of his injuries would be the loss of about a month's working time.

Plaintiff contends that the release was executed under a mutual mistake as to the character of his injury and that it should be set aside for that reason. Nygard v. Minneapolis St. Ry. Co. 147 Minn. 109, 179 N. W. 642. This contention cannot be sustained. If it be conceded that the evidence showed that there was a mutual mistake, plaintiff cannot now for the first time assert that he was entitled to avoid the release on that ground. No mistake was pleaded, no amendment to the reply was proposed, and the court was not asked to submit the case to the jury on the theory that the release might be avoided on the ground of mistake. The only question presented on the motion for a directed verdict was whether there was sufficient evidence to take the question of fraud to the jury and that is the only question properly before us.

Defendant contends that the statements were not made to induce a settlement, that the doctors took no part in bringing it about and that at most the statements were mere expressions of opinion. These contentions are met by the rulings of this court in Smith v. Great Northern Ry. Co. 139 Minn. 343, 166 N. W. 350, and Althoff v. Torrison, 140 Minn. 8, 167 N. W. 119. In the first case the record shows that the company's physician told the plaintiff that his injured eye was all right and that he could go to work, and the claim agent told him he had talked with the physician, who said his eye would be as good as ever in two weeks. In the second case the record shows that the doctors told plaintiff her injury did not amount to much, that they saw no reason why she should not recover in 9 or 10 weeks; that she would be able to go to a dance within 3 or 4 weeks. The injury in each case was in fact serious and permanent, and in each, the statements were made in good faith, but it was held, nevertheless, that the court properly submitted to the jury the issue as to misrepresentations inducing the execution of the releases. The facts are so similar that it may be said the cases are on all fours.

Other cases in point are Jacobson v. Chicago, M. & St. P. Ry. Co. 132 Minn. 181, 156 N. W. 251, L.R.A. 1916D, 44, Ann. Cas. 1918A, 355; Vineseck v. Great Northern Ry. Co. 136 Minn. 96, 161 N. W. 494, 2 L. R.A. 530; Enger v. Great Northern Ry. Co. 141 Minn. 86, 169 N. W. 474; and Kjerkerud v. Minneapolis, St. P. & S. S. M. Ry. Co. infra, page 325.

Whether the release was a bar to this action was a question for the jury under all the evidence, and hence the trial court erred in directing a verdict for the defendant.

The judgment is reversed and a new trial granted.