156

# A. J. MIX v. ROBERT H. DOWNING.[1]

January 4, 1929.

No. 26,939.

See note in 50 L.R.A.(N.S.) 305, et seq; 13 R. C. L. 330.

*Daggett & Redlund,* for appellant.
*Barrows & Stewart,* for respondent.

[1]Reported in 222 N. W. 913.

Wilson, C. J.

Plaintiff appealed from an order denying his motion for a new trial.

On April 7, 1924, plaintiff stepped on a defective manhole cover set in the sidewalk in front of the premises known as 386 Minnesota street in St. Paul, and because of its defective condition known to the defendant, the owner of the building, for some time, it tilted and his leg went into the hole receiving abrasions. The edge of the cover struck plaintiff in the lower region of the vertebrae making a black and blue spot.

The storeroom at this street number is leased by A. G. Spalding & Bros. from defendant, who uses the manhole to receive fuel to heat his building. So far as the record shows he has the exclusive use of it.

Plaintiff promptly consulted a doctor. He employed a lawyer. He was examined by two doctors of his own selection and by one representing the defendant. On June 3, 1924, a settlement was made for $177. Plaintiff was not induced to settle by any statement of defendant or his representatives. At that time all the doctors thought plaintiff's injury in the lower region of the vertebrae was in the nature of a muscular bruise. They did not X-ray the back. No one then knew that plaintiff had an injury to the vertebrae, as hereinafter stated. The settlement of the disputed claim included a release for all "damage, loss or injury, which heretofore have been or which hereafter may be sustained by me in consequence," etc.

At the time of settlement plaintiff still had some pain at the seat of the discoloration. This reoccurred in a minor way until in September, 1924, when the pains became severe. For two years plaintiff then had much to do with doctors, and in the meantime a lump developed at the place of the discoloration and was opened discharging pus. An operation disclosed a piece of bone which had been broken from a branch bone extending from the side of the back-bone. There was a focal infection at the place of the broken bone because the injured tissues furnished a fertile field for germs in the blood supply. When the broken bone was removed plaintiff promptly

recovered. He had suffered much pain, lost considerable time, and had been subjected to an expense of about $1,400. He brought this action to recover damages in the sum of $28,700. The answer alleged the release, and the reply sought its avoidance on the ground of mutual mistake. Upon the theory that the evidence failed to disclose facts sufficient to support an avoidance of the release, the trial court directed a verdict for defendant.

■ Where a landlord makes no agreement to repair the obvious unsafe condition of the leased premises he is not 'liable, in the absence of fraud or concealment, to the tenant or to persons entering upon the premises at the tenant's invitation for injuries sustained by reason of such unsafe condition. Harpel v. Fall, 63 Minn. 520, 65 N. W. 913; Tvedt v. Wheeler, 70 Minn. 161, 72 N. W. 1062; Kayser v. Lindell, 73 Minn. 123, 75 N. W. 1038; Barron v. Liedloff, 95 Minn. 474, 104 N. W. 289; Farley v. Byers, 106 Minn. 260, 118 N. W. 1023, 130 A. S. R. 613; Ames v. Brandvold, 119 Minn. 521, 138 N. W. 786; Daley v. Towne, 127 Minn. 231, 149 N. W. 368; Keegan v. G. Heileman Brg. Co. 129 Minn. 496, 152 N. W. 877, L. R. A. 1916F, 1149; Martinson v. Neubert, 150 Minn. 263, 185 N. W. 651; Nickelsen v. M. N. & S. Ry. 168 Minn. 118, 209 N. W. 646. This rule has some limitations. Ames v. Brandvold, 119 Minn. 521, 138 N. W. 786. But one who negligently creates a danger to a traveler on a public street may be liable for consequences regardless of whether or not he owns or occupies the abutting property. Williams v. John A. Stees Co. Inc. 172 Minn. 35, 214 N. W. 671.

Unfortunately the record in this case does not show the terms of the lease between the defendant and the tenant—especially in reference to the possession, care and maintenance of the sidewalk, of which the manhole was a part. Since defendant owned the sidewalk which was used by the public and used the manhole to put in fuel, the necessary inference is that he retained possession. Farley v. Byers, 106 Minn. 260, 118 N. W. 1023, 130 A. S. R. 613. The question is answered by a mere statement of the fact that the evidence does not show that the lease included the place of the accident. City of Wabasha v. Southworth, 54 Minn. 79, 55 N. W. 818. If not,

it rests with the owner. 36 C. J. 212, § 887; Id. 244, § 956. The record does not bring this case within the rule of the cases cited.

■ Was the settlement a bar to a recovery in this action? Contracts of this character—releases—and their avoidance have been before this court on several occasions. When such release results from the fraud of the opposite party it may be avoided. Peterson v. C. M. & St. P. Ry. Co. 36 Minn. 399, 31 N. W. 515; Id. 38 Minn. 511, 39 N. W. 485; Christianson v. C. St. P. M. & O. Ry. Co. 61 Minn. 249, 63 N. W. 639; Id. 67 Minn. 94, 69 N. W. 640; Morris v. G. N. Ry. Co. 67 Minn. 74, 69 N. W. 628; Schus v. Powers-Simpson Co. 85 Minn. 447, 89 N. W. 68, 69 L. R. A. 887; Merrill v. Pike, 94 Minn. 186, 102 N. W. 393; Erickson v. Northwest Paper Co. 95 Minn. 356, 104 N. W. 291; Peterson v. C. G. W. Ry. Co. 106 Minn. 245, 118 N. W. 1016; Gibson v. Nelson, 111 Minn. 183, 126 N. W. 731, 31 L.R.A.(N.S.) 523, 137 A. S. R. 549; Nelson v. C. & N. W. Ry. Co. 111 Minn. 193, 126 N. W. 902, 20 Ann. Cas. 748; Marple v. M. & St. L. R. Co. 115 Minn. 262, 132 N. W. 333, Ann. Cas. 1912D, 1082; Winter v. G. N. Ry. Co. 118 Minn. 487, 136 N. W. 1089; Jacobson v. C. M. & St. P. Ry. Co. 132 Minn. 181, 156 N. W. 251, L. R. A. 1916D, 44, Ann. Cas. 1918A, 355; Vineseck v. G. N. Ry. Co. 136 Minn. 96, 161 N. W. 494, 2 A. L. R. 530; Althoff v. Torrison, 140 Minn. 8, 167 N. W. 119; Oestreich v. C. St. P. M. & O. Ry. Co. 140 Minn. 280, 167 N. W. 1032; Helvetia Copper Co. v. Hart-Parr Co. 142 Minn. 74, 171 N. W. 272; 5 Dunnell, Minn. Dig. (2 ed.) § 8374; Becker v. Messner, 175 Minn. 471, 221 N. W. 724. The defrauded party may ratify the release transaction induced by fraud. Valley v. Crookston Lbr. Co. 128 Minn. 387, 151 N. W. 137. Mere inadequacy of amount paid is not a badge of fraud. Carlson v. Elwell, 128 Minn. 440, 151 N. W. 188.

It is not a matter of intentional fraud. If the representation is made to induce the settlement and it is not true, there is fraud in law sufficient to overcome the release though the one who speaks may not intend to deceive or mislead his adversary. Jacobson v. C. M. & St. P. Ry. Co. 132 Minn. 181, 156 N. W. 251, L. R. A. 1916D, 44, Ann. Cas. 1918A, 355; Vineseck v. G. N. Ry. Co. 136 Minn. 96,

161 N. W. 494, 2 A. L. R. 530; Helvetia Copper Co. v. Hart-Parr Co. 137 Minn. 321, 163 N. W. 665; Smith v. G. N. Ry. Co. 139 Minn. 343, 166 N. W. 350; Althoff v. Torrison, 140 Minn. 8, 167 N. W. 119; Enger v. G. N. Ry. Co. 141 Minn. 86, 169 N. W. 474; Neelund v. Hansen, 144 Minn. 228, 175 N. W. 538; Kjerkerud v. M. St. P. & S. S. M. Ry. Co. 148 Minn. 325, 181 N. W. 843.

In such cases a false assertion by a surgeon of an opinion as to the extent or nature of an injury may amount to fraud. Oestreich v. C. St. P. M. & O. Ry. Co. 140 Minn. 280, 167 N. W. 1032.

Equity will not permit one knowingly and unconscionably to take advantage of another's mistake. Such conduct sounds in fraud. In such cases a unilateral mistake by one party and knowledge of that mistake by the other party who takes advantage of it will be sufficient to avoid the release. Nadeau v. Maryland Cas. Co. 170 Minn. 326, 212 N. W. 595.

A release may also be avoided when its execution results from a mutual mistake of the parties negotiating it. Nelson v. C. & N. W. Ry. Co. 111 Minn. 193, 126 N. W. 902, 20 Ann. Cas. 748; Nygard v. Minneapolis St. Ry. Co. 147 Minn. 109, 179 N. W. 642; Bingham v. C. M. & St. P. Ry. Co. 148 Minn. 316, 181 N. W. 845; Richardson v. C. M. & St. P. Ry. Co. 157 Minn. 474, 196 N. W. 643.

Where the settlement is made and the release is given with reference only to known injuries and it subsequently develops that a substantial injury then existed which was unknown to the parties and not taken into consideration, the release may be avoided on the ground of mutual mistake. Such was the holding in the Richardson case, 157 Minn. 474, 196 N. W. 643, where it was also definitely held that a release cannot be set aside on the ground that known injuries resulted in unanticipated consequences.

In this case it seems that it was unknown that plaintiff was suffering from a broken bone of a branch of the vertebrae at the time of the settlement. There is sufficient evidence in the record to sustain a finding that he was and that it was the result of being struck by the manhole cover. The parties knew that plaintiff was suffering an injury, towit, a muscular bruise; but if there was then

a broken bone as claimed, which the evidence tends to prove, the jury could also find that the parties did not know it. The subsequent development of the alleged unknown injury is very persuasive that the unknown injury, if any, was a substantial one and not contemplated by the contracting parties.

Equity aims to afford relief to parties who have bound themselves by a written contract executed in justifiable ignorance of a past or existing fact which is so material to the subject matter that if it had been known the contract would not have been made.

We are of the opinion and hold that the evidence was sufficient to take the case to the jury to determine whether there was a mutual mistake sufficient to avoid the release.

Reversed.

STONE, J. (dissenting).

The law should afford more protection than they now enjoy to unsophisticated persons who are injured by the negligence of another and then hurried into hasty, unwise and frequently unfair settlements by the diligence of trained claim adjusters whose main object in life is to get such settlements as speedily and at as low a figure as possible. But the legislature rather than the courts must make the new law necessary to meet that situation. On their part, judges can only make the established legal and equitable remedies as elastic as their nature permits. They should not ignore and cannot repeal them. Frequently we find an unfortunate litigant bound by a contract from which we would be happy to release him. But we cannot do so by legal means and so, regretfully, leave him where we find him. Releases present the problem more frequently perhaps but with no different legal factors than other contracts.

In this case, the diagnosis by the examining physicians was faulty, but that and its effects are not chargeable to defendant. In legal effect, the mistake was that of plaintiff alone—defendant did not know there was any mistake, and so there is no question of inequitable conduct. The release is of "any damage, loss or injury, which heretofore have been or which hereafter may be sustained by me [plaintiff] in consequence" of the accident. So it seems to

have done what was held not to have been accomplished in Nygard v. Minneapolis St. Ry. Co. 147 Minn. 109, 113, 179 N. W. 642. In that case the court seemed to have considered that "there was no attempt to settle for any except" the injury known to exist at the time the release was executed. Here we have a release manifestly intended to cover and expressly including all damaging consequences of the accident and projecting itself around all future effects whatever they were. It should be given effect accordingly. In the Nygard case, 147 Minn. 109, 113, 179 N. W. 642, which went to the utmost limit in avoiding a release, it was expressly recognized that "when parties intentionally settle for unknown injuries received in an accident, the release obtained is incontestable." Of course that is the law. Richardson v. C. M. & St. P. Ry. Co. 157 Minn. 474, 196 N. W. 643.

I have always supposed that the intention of a written contract was to be gathered from what is expressed by its language and that where upon application of that language to its subject matter it is plain that the parties intended but one thing, it is not permissible for either to say, and much less for any court to hold (as suggested in the Nygard case) that the thing so intended and expressed was not "within the knowledge or contemplation of the parties" [147 Minn. 112]. If that view is sound, it must follow that where damages for personal injury are settled by compromise and the contract discharges the claim for unknown as well as known damage there is no room for relief on the ground of mutual mistake. That is because the very contract is predicated on the possibility of mistake in the then assumptions of the parties concerning the nature, extent or ultimate effect of the injuries. It recognizes the possibility of such error and therefore expresses the intent to release as to unknown as well as known results.

On the question of construction of such a contract, it is plain that whoever is paying the money does so always for the purpose, unless some other is expressed, of discharging the whole claim once and for all, no matter what may come in the future. The moneys paid, frequently large in amount, are never parted with on the supposition

that the cause of action is being settled in part only—as to the known items of damage—and that it may be presented later and again as to another part—items of damage unknown at the time of the supposed compromise. It is because releases of the kind now in question deal with the unknown, and to a large extent with that which cannot be known, that the ordinary rules concerning relief on the ground of mutual mistake find no application. The possibility of mistake is one of the things within the contemplation of the parties, and so the rules concerning mutual mistake have "no application to cases of compromise, where doubts have arisen as to the rights of parties, and they have intentionally entered into an arrangement for the purpose of compromising and settling those doubts. Such compromises, whether involving mistakes of law or of fact, are governed by special considerations." 2 Pomeroy, Eq. Jur. (4 ed.) § 849. Quoting further from the same author—where a contract settles doubtful claims by compromise—

"Where parties have knowingly entered into a speculative contract or transaction;—one in which they intentionally speculated as to the result,—* * * if the facts upon which such agreement or transaction was founded, or the event of the agreement itself, turn out very different from what was expected or anticipated, this error, miscalculation, or disappointment, although relating to matters of fact, and not of law, is not such a mistake, within the meaning of the equitable doctrine, as entitles the disappointed party to any relief * * *. In such classes of agreements and transactions, the parties are supposed to calculate the chances, and they certainly assume the risks, where there is no element of bad faith, breach of confidence, misrepresentation, culpable concealment, or other like conduct amounting to actual or constructive fraud." 2 Pomeroy, Eq. Jur. (4 ed.) § 855.

I construe the contract now involved as one releasing for unknown as well as known results; hence my reluctant disagreement with the majority opinion.