HARRY H. GAY and Others v. MICHAEL F. KELLEY.[1]

November 12, 1909.

Nos. 16,276—(59).

**Order Granting New Trial — Reference to Memorandum by Appellate Court.**

When a motion for a new trial is made upon the ground that the ver-

[1]Reported in 123 N. W. 295.

dict is not supported by the evidence and for errors of law occurring at the trial, and the order of the court granting a new trial does not specify upon what ground the motion is granted, the memorandum of the trial court may be referred to, for the purpose of ascertaining upon what ground the order was granted, notwithstanding the omission of the word "memorandum" in subdivision 7, § 4198, R. L. 1905.

**Undisclosed Principal — Enforcement of Contract against Him or His Agent.**

Where one party to a contract deals with another as principal, and afterwards discovers that such party was in fact an agent for an undisclosed principal, he may enforce the contract against such agent, or against the principal; but, where the undisclosed principal denies that he is the principal, the party who seeks to enforce the contract may commence an action against both, in order to ascertain the facts. *Held*, on the facts before the trial court at the beginning of the trial, the court did not err in not requiring plaintiffs to elect as between the parties defendant.

**Election by Plaintiff.**

In such case the dismissal of the action at the close of plaintiffs' case as to one of the defendants, in response to their motion to elect, was equivalent to an election to hold the other defendant. *Held*, defendant Kelley was not prejudiced by the order of the court permitting plaintiffs to reopen their case after resting and dismissing the same as to defendant Uren.

**Same — Question for Jury.**

Under the evidence it did not conclusively appear that plaintiffs had elected to hold defendant Uren, and that they had abandoned their action as against defendant Kelley. Under all of the evidence it was a question of fact properly submitted to the jury.

Action in the district court for St. Louis county against Samuel Uren and Michael F. Kelley to recover a balance of $509.25. The complaint alleged the purchase by plaintiff brokers of certain shares of stock at the request of defendant Uren, and, upon his refusal to pay, a sale of the same, and that "said defendant Uren was at all times acting for and on behalf of and as the agent of defendant Michael F. Kelley, who authorized and directed defendant Uren to cause said Cliff Mining Company's stock to be purchased by plaintiffs for him, said defendant Michael F. Kelley, as aforesaid; but defendant Uren did not disclose to these plaintiffs his said agency or that he was acting in said transaction for said Kelley." The defendants answered jointly and denied the contract and the agency.

The case was tried before Dibell, J., and a jury. At the close of plaintiffs' case, defendant's motion to dismiss the action as to defendant Kelley was denied, while plaintiffs' motion to dismiss as to defendant Uren was granted. At the close of defendant's case defendant Kelley moved the court to direct a verdict in his favor, for the reason (1) that the plaintiff has shown no agency on the part of the defendant Uren sufficient to bind the defendant Kelley in this transaction; (2) for the further reason that under the evidence it appears, as matter of law, that the plaintiffs selected Samuel Uren and attempted to hold him and cannot now maintain this action against the defendant Kelley, and waive the right to hold the defendant Kelley in this action by the actions of the plaintiffs after the transaction in question and before the commencement of the present action. This motion was denied. The case was submitted to a jury which returned a verdict in favor of plaintiffs for $509.21. Defendant Kelley then moved the court for judgment notwithstanding the verdict or for a new trial. The court ordered: "1. That the motion of the defendant Kelley for judgment notwithstanding the verdict be denied. 2. That the motion of the defendant Kelley for a new trial be granted." To this order was attached the following memorandum: "I am not satisfied to hold under the evidence as it is that a verdict should have been directed in favor of the defendant Kelley, upon the theory that the plaintiffs had elected to proceed against the defendant Uren. The question probably ought to be determined as one of fact. The trial was quite unsatisfactory owing to the failure of the court to apprehend the real questions of law applicable to the issues. There were probably some positive errors of law, but aside from that it is best that there be a new trial."

From that part of the order denying the motion for judgment, defendant Kelley appealed. From that part of the order granting a new trial, plaintiffs appealed. Affirmed.

*Baldwin, Baldwin & Dancer,* for plaintiffs.

*McMahon & Rock,* for defendant.

LEWIS, J.

Respondents were stockbrokers, and brought this action to recover the amount claimed to be due for the failure to pay for certain stock alleged to have been purchased by appellant Uren for and on behalf of appellant Kelley. Appellants moved for judgment notwithstanding the verdict in favor of defendant, and, if that be denied, for an order setting aside the verdict and granting a new trial. The court denied the motion for judgment notwithstanding the verdict, but granted the motion for a new trial, without stating in the order upon what ground, whereupon Kelley appealed from that portion of the order denying his motion for judgment, and respondents appealed from that part of the order granting the motion of appellant Kelley for a new trial. Counsel for Kelley conceded at the argument that the appeal from the order denying the motion for judgment notwithstanding the verdict would have to be abandoned, under the authority of St. Anthony Falls Bank v. Graham, 67 Minn. 318, 69 N. W. 1077; Oelschlegel v. Chicago G. W. Ry. Co., 71 Minn. 50, 73 N. W. 631, and Savings Bank of St. Paul v. St. Paul Plow Co., 76 Minn. 7, 78 N. W. 873, and the only question remaining was whether the court erred in granting a new trial.

A memorandum of the trial court was attached to, but not made a part of, the order granting the motion for a new trial. In that memorandum the trial judge states that he had some doubt as to the rules of law applicable to the case; "but, aside from that, it is best that there be a new trial." At the argument before this court it was assumed by the court and counsel that chapter 46, p. 51, Laws 1901, was still in force, and that the memorandum, although not attached to the order, might be considered for the purpose of determining upon what ground the order was granted. Since the argument our attention has been called to the fact that chapter 46 was amended by the Revised Laws of 1905, by striking out the word "memorandum." Subdivision 7, § 4198, R. L. 1905, with reference to new trials, reads:

"That the verdict, decision or report is not justified by the evidence, or is contrary to law; but unless it be so expressly stated in

the order granting a new trial, it shall not be presumed on appeal to have been made on the ground that the verdict, decision or report, was not justified by the evidence."

Prior to the enactment of chapter 46, Laws 1901, the rule was that, when a new trial was granted in general terms, the memorandum could not be referred to for the purpose of determining upon what ground the order was granted. Morrow v. St. Paul City Ry. Co., 65 Minn. 382, 67 N. W. 1002. And presumably chapter 46 was enacted to change the effect of the decision. In Halvorsen v. Moon & Kerr Lumber Co., 87 Minn. 18, 91 N. W. 28, 94 Am. St. 669, decided June 27, 1902, the motion for a new trial was based upon several grounds, and there was no memorandum. The court held that the order granting the motion for a new trial could be sustained only for errors of law occurring at the trial, and reference was made to chapter 46, Laws 1901. This decision was followed in Berg v. Olson, 88 Minn. 392, 93 N. W. 309; Fitger v. Guthrie, 89 Minn. 330, 94 N. W. 888; Hillestad v. Lee, 91 Minn. 335, 336, 97 N. W. 1055; Owens v. Savage, 93 Minn. 468, 101 N. W. 790; Briggs v. Rutherford, 94 Minn. 23, 101 N. W. 954; Merrill v. Pike, 94 Minn. 186, 102 N. W. 393; Sather v. Sexton, 101 Minn. 544, 112 N. W. 1142.

The above cases have reference solely to those orders granting a new trial in general terms, when the motion for a new trial was based upon two or more grounds; but there is another line of decisions having reference to the use of the memorandum, when not made a part of orders other than those granting a new trial. In the case of Myers v. Chicago, St. P., M. & O. Ry. Co., 69 Minn. 476, 72 N. W. 694, 65 Am. St. 579, the order appealed from was one overruling a demurrer, and the court held that the order should be taken with all the force and effect which its language implied, uncontrolled by the memorandum of the trial court. So in Boen v. Evans, 72 Minn. 169, 75 N. W. 116, where the motion before the trial court was for leave to amend the complaint, the motion was denied in general terms, and it was held that the memorandum could not be considered to determine upon what ground the motion was granted; it appearing from the order itself that it was one ad-

dressed to the discretion of the court. A similar case is Kertson v. Great Northern Exp. Co., 72 Minn. 378, 75 N. W. 600. This rule was modified in Johnson v. Johnson, 92 Minn. 167, 99 N. W. 803, to the extent that the memorandum, although not made a part of the order, might "be resorted to for the purpose of interpreting the meaning of the findings;" but, as limited by later decisions, the memorandum cannot be referred to for the purpose of impeaching the order, where its terms are clear and explicit. Holland v. Great Northern Ry. Co., 93 Minn. 373, 101 N. W. 608; Kipp v. Clinger, 97 Minn. 135, 106 N. W. 108; Alton v. Chicago, M. & St. P. Ry. Co., 107 Minn. 457, 120 N. W. 749.

We have not heretofore had occasion to consider the peculiar language of chapter 46; but it would seem that the law was passed for the express purpose of changing the rule adopted by the court. The use of the trial court's notes for the purpose of clearing up an indefinite order, where by inadvertence the court had granted a new trial without stating the grounds, was certainly desirable. The legislation was intended to apply to a special class of orders, however, and did not affect the decisions with respect to orders of a different character. Prior to 1905 it had become the settled rule that the memorandum could be referred to for the purpose of elucidating, but not impeaching, the order, and when the language of chapter 46, Laws 1901, with the word "memorandum" omitted, was adopted in the Revised Laws of 1905, could it have been for the purpose of restoring the former rule, and to provide that the memorandum should not be referred to for any purpose? This construction should not be adopted, if there is any other reasonable explanation for the omission. The codifiers and the legislature may have proceeded on the theory that it was no longer necessary to retain the word "memorandum." This view seems reasonable, and we hold that the purpose of the amendment was to render the statute in harmony with the more recent decisions of the court, which considered the memorandum, within certain limits, to be a part of the order.

In this case the trial court did not specifically state that the evidence was insufficient, but did state, after referring, with some doubt, as to the propositions of law applicable to the case, that it

was best that a new trial be. granted. · This could only mean that the court was not satisfied that the evidence was sufficient to sustain the verdict. The evidence is not so manifestly in favor of the verdict as to require reversal of the order, and it is accordingly affirmed. In view, however, of the request of counsel, and the statement that there are other actions dependent upon the legal propositions involved in this case, we have deemed it proper to consider the questions of law involved and ruled upon by the trial court.

The contract was made with Uren as principal; but on the next day respondents were informed by him that he represented Kelley, and this action was commenced against both, and they answered jointly and denied the contract and the agency. At the opening of the case the trial court was called upon to compel the plaintiff to elect; but there were no facts before the court, except what appeared in the pleadings. Where a person contracts with another, who is in fact an agent of an undisclosed principal, and, after learning all of the facts, brings an action on the contract and recovers judgment against the agent, such judgment is a bar to an action against the principal. Lindquist v. Dickson, 98 Minn. 369, 107 N. W. 958, 6. L. R. A. (N. S.) 729. The general rule, as stated in Wm. Lindeke Land Co. v. Levy, 76 Minn. 364, 79 N. W. 314, seems to be that where a contract by parol, or in writing, is made by a duly authorized agent, without disclosing his principal, and the other contracting party subsequently discovers the real party, he may abandon his right to look to the agent personally, and may resort to the principal. But the only question involved in that case was whether or not parol evidence was admissible to vary the terms of the contract, by showing that there was an undisclosed principal, and the case does not warrant the inference that the plaintiff must abandon his action against the agent as soon as he discovers that there may be an undisclosed principal. There is no conflict between these two cases. It does not follow that, because the plaintiffs cannot hold both the agent and the principal to a complete performance of the contract, they were compelled to elect which one to pursue immediately upon being informed by the agent that he represented another.

At the time the motion was made to elect. at the beginning of the

trial, the court was informed by the complaint that Kelley was claimed by the plaintiffs to be the principal; but this was denied by the answer. The two principal questions at issue under the pleadings were: Was there a sale of the stock to Uren? and did the relation of principal and agent exist between Uren and Kelley? Until the evidence disclosed the facts, the court could not require the plaintiffs to elect. Decisions directly in point are rare; but it was held in McLean v. Sexton, 44 App. Div. 520, 60 N. Y. Supp. 871, that the vendor might sue both the principal and agent in the same action, and that there was no objection in proceeding to judgment against both parties, the limitation being that the creditor could not finally enforce payment of his claim from both. In Tew v. Wolfsohn, 77 App. Div. 454, 79 N. Y. Supp. 286, an action was brought against both the agent and his principal on a contract made by the agent without disclosing his agency, and it was held that there need be no election by the plaintiff as to which party he was to hold until the close of the case. It is there stated that it would be manifestly unjust to require the plaintiff to elect in such case, at least before all of the evidence was in.

The motion on behalf of the defendants to compel plaintiffs to elect having been denied, the cause proceeded to trial, and defendant Uren was called by plaintiffs for cross-examination under the statute. After his testimony and that of other witnesses was received, plaintiffs rested, and defendants renewed the motion to compel plaintiffs to elect. Plaintiffs objected; but the court granted the motion, and thereupon, with the permission of the court, plaintiffs reopened their case and dismissed the action as to defendant Uren. The effect of dismissing as to defendant Uren was an election to hold defendant Kelley. The cause having been dismissed, Kelley's counsel made a motion to strike out all of the testimony given by Uren, upon the ground that it was received while he was under cross-examination, but at the same time requested the court to consider Uren to have been called as a witness on the part of plaintiffs. Plaintiffs made no objection to Uren being considered their witness, the evidence was so treated, and Kelley's counsel declined

to cross-examine Uren. For this reason, defendant is not in position to claim that he was prejudiced by the proceedings.

It is further urged that the court erred in submitting the question of election to the jury, and in instructing the jury that, under all the evidence, they might determine whether or not plaintiffs had elected to hold the agent. The principal facts elucidated at the trial with respect to this matter were that, the next day after the contract was made and the stock was purchased, plaintiffs were informed that Kelley was the real party in interest, and that, after being informed of such fact, they received one hundred shares of capital stock of another company from Uren to be sold on his account, which they did sell and apply, and the further fact that soon thereafter they filed a complaint in the district court against the agent, and also that the plaintiffs did not make any demands upon or commence any action against Kelley until twelve months after being informed that he was the real principal.

The court correctly submitted the question to the jury to determine as a question of fact. It does not conclusively appear from the evidence that plaintiffs had elected to pursue the agent. At the time plaintiffs received the one hundred shares of stock from Uren to sell on his account, they had been told by Uren that he represented Kelley; but Kelley denied it. Under such circumstances, the fact that plaintiffs did not proceed against Kelley until about a year after Uren's statement did not necessarily amount to an election to hold Uren, or a waiver or abandonment of their right to pursue Kelley, conceding that it was not necessary to plead waiver or abandonment in defense. Of course, if an agent at the time of the making of a contract discloses the name of his principal, and the contract is then made with the agent alone, the person making the contract cannot maintain an action upon it against the principal. So held in Silver v. Jordan, 136 Mass. 319. But this rule simply illustrates the reason why the plaintiff should not be required to elect until he is put in possession of the facts. In Smethurst v. Mitchell, 1 El. & El. 622, it was found that the plaintiff had waited an unreasonable time after discovering the undisclosed principal before commencing an action against him, and that the principal had in the meantime

changed his condition, having acted upon the supposition that plaintiff had elected to hold the agent. But the principle controlling in that case has no application here, because there was no evidence that appellant Kelley had assumed any new responsibility because of his belief that respondents had elected to pursue his agent. Affirmed.