# WILLARD A. CURTIS v. NORTHWESTERN BEDDING COMPANY.[1]

May 2, 1913.

Nos. 17,919—(71).

**Bill of sale — parol evidence.**

1. A bill of sale, purporting to be made by a corporation of its property and business, contained a guaranty by it and the plaintiff that the accounts found on its books were correct, and that the books, mentioning them, truthfully stated the debts and credits. Plaintiff owned practically the whole concern, and received the whole consideration, including the note in suit. The consideration was paid by defendant, it being the real purchaser; but in the bill of sale its agents and officers, for the convenience of all parties, were the nominal purchasers. *Held*, that it was permissible to show by parol testimony that defendant was the real purchaser and entitled to recover for breach of the guaranty. *Held*, also, that plaintiff was bound by the guaranty, as well as the corporation.

[1] Reported in 141 N. W. 161.

**Breach of guaranty.**

2. Under the guaranty, the private ledger, purporting to show a summary of the debts and credits, through erroneous entries showed the concern to be more than $5,000 better off than it actually was. The true condition, however, would have been disclosed by a thorough examination and footing of some 300 accounts contained in the other books of account. The purchase was made upon an inventory taken by the purchaser two weeks prior and in reliance on the guaranty. *Held,* that the guaranty covered the private ledger, and the failure of it to correctly disclose the debts and credits constituted a breach of the guaranty, and to the extent that it showed the debts and credits to be more favorable to the corporation than was the fact defendant was prima facie damaged.

**Same.**

3. The same applies to omissions from the books of liabilities incurred for running expenses and invoices for goods received as stated in the opinion.

Action in the district court for Ramsey county to recover $4,500 upon a promissory note. Among other matters the amended answer alleged that Adolph C. Wilcken and Frederick W. Wilcken, in all transactions referred to, were acting solely as the agents of defendant, and their agency for defendant was fully disclosed and fully known to plaintiff and other parties in interest; that plaintiff was practically the only stockholder of the Union Mattress Company, was its president, and on its behalf conducted the negotiations in question. The amended answer set out the terms of the guaranty quoted in the opinion on page 292, infra, alleged that the note described in the complaint was executed and delivered to plaintiff as a part of the purchase price of the property, and of the consideration of $35,500 mentioned in the bill of sale. It alleged that the books of account described in the bill of sale were false and misleading to the knowledge of plaintiff in certain specified particulars; that defendant bought the capital stock of the Mattress Company, and all its property and assets, upon the faith and credit of their book value as shown by the books of account, especially upon the faith and credit of the control account or accounts which were kept for the purpose of showing the condition and value of the business, and that in purchasing the property it believed and relied upon the representations and warranty concerning the same, made by the Mattress Company

121 M.—19.

and the plaintiff in the bill of sale; that, by reason of the falsity of the books of account, the property at the time of the purchase by defendant was actually worth $6,095.70 less than it would have been worth if its condition and value had been what the books of account made it to appear, and as plaintiff represented and warranted it to be, and that defendant had been damaged by reason thereof in that sum; and set up the sum of $6,095.70 as a counterclaim against the note of $4,500 and prayed judgment in favor of defendant in the sum of $1,595.70, or such other amount as might be shown upon an accounting to be justly due to the defendant. The reply denied that the purchase of the property of the Mattress Company was made by defendant and averred that it was bought by the Wilckens.

The case was tried before Olin B. Lewis, J., who made findings of fact as stated in the opinion, and ordered judgment in favor of defendant for the sum of $1,033.28. Upon the motion of plaintiff, the findings of fact were amended but the order for judgment was left unchanged. From an order denying plaintiff's motion for a new trial, he appealed. Affirmed.

*Barton & Kay*, for appellant.
*O'Brien, Young & Stone*, for respondent.

HOLT, J.

In this action on a promissory note, a counterclaim arising upon a contract of guaranty was pleaded and allowed in a sum exceeding the amount due on the note. Plaintiff appeals from the order denying his motion for a new trial.

The findings in this case are lengthy, and only those matters which elucidate the questions to be determined on this appeal will be stated. On March 22, 1911, a sale of a manufacturing business was concluded by the execution of a bill of sale, signed by the Union Mattress Company, a corporation, and also by plaintiff, running to Adolph C. Wilcken and Frederick W. Wilcken, purporting to transfer to the purchasers all of the personal and mixed property of said corporation, including bills receivable, accounts receivable, choses in action, and contracts constituting all of the assets of the Union Mattress Company, and all the surplus profits and dividends on stock thereto-

fore accrued. In consideration of the purchase, the signers guaranteed that the balances due on all the contract claims and bills and accounts receivable of the corporation, as well as all its debts and obligations were truly and correctly shown on its books of account. The deal had been pending since some time in February preceding, and the Wilckens were permitted to take and had taken an inventory of the stock and machinery of the plant two weeks prior to the sale. Of the purchase price agreed on, $10,500 in cash was paid by defendant, and the balance was paid by defendant's promissory notes, made payable to the Wilckens and indorsed by them. One of these notes is the note in suit.

After the sale, it was ascertained that there were errors in the books of account. The result of such errors was that the debts of the concern were $5,069.28 more and the credits $464 less than the amounts disclosed upon such an examination as a person would ordinarily make of the books to ascertain the debts and credits. Of this sum something over $4,100 in liabilities was correctly shown in the purchase ledger and sales ledger, and a critical examination of all the individual accounts of those who had dealings with the Union Mattress Company would have revealed that the summary of these accounts upon the general ledger, or so-called private ledger, was wrong to that extent. The balance of the amount allowed as damages on the counterclaim results from actual omission to post the debts incurred for goods purchased subsequently to entering the February invoices on the books, the running expenses for the first 21 days in March, and some errors and improper entries in the individual accounts.

The main contentions of plaintiff are: (a) That, if plaintiff is bound by the guaranty, which he questions, it did not inure to the benefit of defendant, and cannot be enforced by it, because it was not a party to the contract; and against plaintiff's objection parol evidence was inadmissible to show that the sale was to the defendant, the real purchaser. (b) The error in the private ledger referred to was not covered by the guaranty, and was without damage, because the entries in sales ledger and purchase ledger disclosed the true situation, and hence no damages could have resulted from the error

in the private ledger. (c) Although the running expenses and invoices for goods received during March up to the twenty-first were not entered on any books, this appeared from a casual inspection, and could neither be a damage contemplated by the parties as flowing from a breach of the guaranty, nor was there in fact any damage by the omission to enter these on the books.

Plaintiff makes the claim that he is not bound by the guaranty in the bill of sale, because the sale purports to be made by the Union Mattress Company, and, though it is signed by him, it was so signed without consideration. True, the bill of sale recites that the "Union Mattress Company, in consideration of $35,500 to it in hand paid by Adolph C. Wilcken and Frederick W. Wilcken, * * * does hereby grant, bargain, sell and convey" to said Wilckens the property of the corporation, describing it. Then occurs this language:

"In consideration of the purchase of said property by Adolph C. Wilcken and Frederick W. Wilcken, the undersigned guarantee that the balances due on said contracts and open accounts and bills receivable are correctly set out in the books of account of the Union Mattress Company * * * and also that all the just debts, obligations. and liabilities of the Union Mattress Company are fully and truthfully set forth in and by its books of account now delivered to said Adolph C. Wilcken and Frederick W. Wilcken [naming the books]. * * * In testimony whereof the said Union Mattress Company has caused these presents to be executed in its corporate name by its president and its secretary, and its corporate seal to be herewith affixed, and Willard A. Curtis has hereunto set his hand and seal this 21st day of March, 1911."

It is plain that plaintiff bound himself personally by the guaranty. And as to want of consideration moving to plaintiff, if that were necessary, it is enough to say that plaintiff was the president and owner of practically the whole capital stock of the Union Mattress Company, that both the cash and the notes, one of which is the one in suit, were delivered to him, and not the slightest intimation is found in the record that any thereof ever passed from him.

If it were permissible under the rules of evidence to show that defendant was the real purchaser, and not the Wilckens, named as

such in the bill of sale, then there can be no doubt of defendant's right to set up a breach of the guaranty as a counterclaim. There was abundant evidence, if admissible, to the effect that defendant was the real purchaser; that the Wilckens, the officers and agents of defendant, acted for it, and for the sake of giving validity to a transaction which the parties apprehended might come within a statutory inhibition, were the purchase made by defendant direct, all the parties interested in the sale and purchase agreed to substitute the names of the Wilckens for that of defendant in the bill of sale; that plaintiff knew defendant was the real purchaser and paid the consideration; and that, to prevent any claims thereafter to be made that the notes he received were accommodation paper, which defendant could not lawfully issue, plaintiff insisted that the board of directors of defendant take action on this purchase and enter the same on the minutes of defendant.

Plaintiff was apparently the sole owner of the Union Mattress Company; at least he consulted no other person interested in the corporation in making the sale. The Wilckens were officers having the active management of defendant in hand, and the purchase was undoubtedly made in behalf of defendant to absorb a competitor. Could all this be proven by oral testimony against the objection that it tended to vary a written instrument? It has been held that an undisclosed principal may come in and enforce a contract made in the name of his agent. Wm. Lindeke Land Co. v. Levy, 76 Minn. 364, 79 N. W. 314, wherein the decision in Rowell v. Oleson, 32 Minn. 288, 20 N. W. 227, to the contrary was overruled. No good reason is suggested why, when it is permissible to show by parol that the contracting party in a written instrument contracted, not for himself, but for an undisclosed principal, it should not in like manner be permissible to prove that the other party consented and insisted that the contract be made nominally with the agent, but for and in behalf of the principal. And we deem the force and effect of the decision in Pleins v. Wachenheimer, 108 Minn. 342, 122 N. W. 166, 133 Am. St. 451, and the authorities therein cited, to be determinative of the question that the evidence was properly received. See also Byington v. Simpson, 134 Mass. 169, 45 Am. Rep. 314.

Plaintiff admitted that the summary of each month's business was entered on the private ledger, and was supposed to reflect truly the standing of the corporation as to its debts and credits. Therefore, instead of going through and footing up some 300 accounts entered on its other books, a person could go to the private ledger and see at a glance what the corporation owed and what others owed it at the end of any month. "Private ledger" was another name for "general ledger." It is specifically named in the guaranty. Its importance to the proprietor of the business and to one who intended to become such is quite apparent. In behalf of defendant, it is claimed that the accuracy of the private ledger as to debts and credits was relied on in the purchase, and that the individual accounts were not summed up in making the deal. Plaintiff knew that defendant, or its officers, the Wilckens, had taken an inventory of the visible assets of the plant on March 8, 1911. He also knew that the purchaser considered the correctness of the books of account of great importance in making the deal; for, when the parties could not agree as to the employment of an expert accountant to verify the books before closing the sale, this guaranty was insisted upon and given.

Under these circumstances, the guaranty must be construed so that if, because of errors in bookkeeping, the private ledger showed the debts and credits of the business to be $4,100 better than it actually was, a breach occurred, and prima facie the damages would be the amount which the private ledger failed to disclose. If the books of the concern were correct, and to be depended on, it is plain that information as to an individual account would be sought in the sales ledger or purchase ledger, as the case might be; but information as to the sum total of debts and credits would be sought in the private ledger. This sum total the purchaser undoubtedly depended on as correct under the guaranty, and we hold it had a right so to do.

Some inaccuracies in the accounts prior to March 1, 1911, are virtually conceded to come under the guaranty; but one account plaintiff contends was erroneously held inaccurate. The book shows a loan to one Gardner of $100. It appears that this was not a loan made by the corporation, but by plaintiff personally, and as evidence thereof he accepted Gardner's note payable to himself. This note,

unindorsed, was among the papers turned over to the defendant, or the Wilckens, and plaintiff insists the account against Gardner is offset or paid by this note. Defendant's contention is that the unindorsed note payable to plaintiff's order, found among the papers, without any agreement to pass title thereto, does not belong to defendant, and it cannot hold Gardner upon the account. In this defendant is right.

The running expenses for the first 21 days of March, 1911, did not appear on any book, nor did a number of invoices for goods bought. One claim of plaintiff is that the purchaser knew that this was a going business, and necessarily running expenses accrued every day; so, also, goods were purchased from day to day, and while these running expenses and liabilities for goods purchased increased the total debts, it likewise increased the visible assets. Therefore, even if a breach of the guaranty in respect to these accounts occurred, there was no damage. This argument is plausible and of some force. But we conclude it cannot change the result on this appeal.

As to invoices for goods received and on hand when the inventory was taken on March 8, the inference would be that damage resulted to the defendant, if the books did not on March 21 contain the proper entries. The record does not disclose that any of these goods were received after March 8. They may have been there when the inventory was taken. The only inference to the contrary would be from the fact that the invoices for a small amount are dated subsequent to March 8; others are dated as far back as as in 1909 and 1910. It may also be said with regard to the running expenses that whatever of these affected the visible assets when the inventory was taken, and were not then charged on the books, would clearly come within the guaranty. For the two weeks beginning March 8, although the running expenses were going on for the purpose of increasing the value of the visible assets, we cannot assume that such was the result. In the absence of a showing that the running expenses not found on the books increased the value of the business as it was when the inventory was taken, we cannot say that the damages for the breach of the guaranty in this respect were

not the amount of such running expenses as found by the trial court. We fail to find any substantial error in the record.

Order affirmed.