SEABOARD SURETY COMPANY, a corporation, Plaintiff,

v.

(1) H & R CONSTRUCTION CORPORATION, a Minnesota corporation; (2) H. H. Rohr; (3) H. C. Nelson and Sidney A. Nelson, doing business as H. C. Nelson Investment Co.; (4) H & R Construction Corporation, a Minnesota corporation, and H. C. Nelson Investment Co., co-partners doing business under the firm name and style of H & R Construction Corporation; (5) State of Minnesota, acting by and through M. J. Hoffman, its Commissioner of Highways; (6) Fred E. Tripp; (7) The First National Bank of Saint Paul, Minnesota; (8) The Lummus Company, a Delaware corporation; (9) Woodrich Construction Co., a Minnesota corporation; (10) Rosholt Equipment Co., a Minnesota corporation; (11) The George T. Ryan Company, a Minnesota corporation; (12) Wm. H. Ziegler Co., Inc., a Minnesota corporation; (13) Rocket Transfer, Inc., a Minnesota corporation, and John Doe, Richard Roe, Jane Doe, and all other persons, firms and corporations, bureaus, agencies, authorities or other agencies who have or claim to have any right or claim under the within mentioned payment bonds, or any of them, or against plaintiff by reason thereof, or against the within mentioned unpaid contract balances, or any of them, Defendants.

Civ. No. 2690.

United States District Court
D. Minnesota, Third Division.

July 5, 1957.

Thomas, Bradford, King & Collatz, Paul C. Thomas and Frederick A. Collatz, St. Paul, Minn., and Matthew J. Levitt, Minneapolis, Minn., appeared on behalf of plaintiff.

Briggs, Gilbert, Morton, Kyle & Macartney, by Frank J. Hammond, St. Paul,

Minn., appeared on behalf of defendants H. C. Nelson, Sidney A. Nelson and H. C. Nelson Inv. Co.

George N. Guttmann, Minneapolis, Minn., appeared on behalf of defendants H & R Const. Corp. and Harlyn H. Rohr.

Nunan, Quealy, Colwell & Bauman, by A. J. Greffenius, Minneapolis, Minn., appeared on behalf of defendant Rocket Transfer, Inc.

Frank E. Clinite and Charles F. Kelly, Minneapolis, Minn., appeared on behalf of defendant Armco Drainage and Metal Products Co.

Sullivan, Stringer, Donnelly & Sharood, by Robert O. Sullivan, St. Paul, Minn., appeared on behalf of defendant Borchert-Ingersoll, Inc.

W. M. Kronebusch, Minneapolis, Minn., appeared on behalf of defendant Wm. H. Ziegler Co., Inc.

Charles J. Foley, Minneapolis, Minn., appeared on behalf of J. V. Gleason, doing business as the J. V. Gleason Co.

DONOVAN, District Judge.

This suit, seeking broad relief against the defendants, arises primarily out of plaintiff's bonding H & R Construction Corporation, a Minnesota corporation, hereinafter referred to as H & R, in connection with eight contracts, most of which had to do with public work contracted for by H & R. H. C. Nelson and Sidney A. Nelson, doing business as H. C. Nelson Investment Co., and hereinafter referred to as the Nelsons, are, together with H & R and H. H. Rohr, the principal defendants in the case. The remaining defendants are subcontractors and materialmen.

The complaint, alleging fourteen causes of action, describes the Nelsons as partners of, or joint venturers with, H & R in connection with said work, and for which plaintiff wrote and issued surety bonds covering eight different jobs.[1] Defendant H. H. Rohr is charged in the eleventh cause of action as an individual indemnitor on all bonds involved herein. Defendants The Lummus Company, Rohr and H & R did not answer. The Nelsons answered, denying liability, the partnership, the joint venture, and any relationship with Rohr or H & R, other than that of creditor, and counterclaimed for the claimed indebtedness due them from H & R and plaintiff as surety on the bonds. H & R answered the counterclaim of the Nelsons and, denying liability to them, counterclaimed for alleged indebtedness due from the Nelsons in connection with the eight contracts involved herein.[2]

[1] Paragraph V of the first cause of action is realleged in each of the remaining causes of action, and is descriptive of the theory of plaintiff's case, resulting in a record of over five thousand pages. It reads as follows:

"That during all times hereinafter mentioned defendants H & R on the one part and H. C. Nelson and Sidney A. Nelson, individually and as co-partners doing business under the firm name and style of H. C. Nelson Investment Co. on the other part, were partners with respect to the various contracts and agreements hereinafter referred to and in the conduct and operation thereof which they conducted under the firm name and style of H & R Construction Corporation. That for the purpose of convenience such partnership and the members thereof are hereinafter referred to herein as "Partnership Defendants." That the Partnership Defendants agreed between themselves, among other things, that H & R would be the nominee and agent of the Partnership Defendants; that bids for various contracts, the contracts themselves, applications for bonds and bonds would be executed by H & R in its own name but on behalf of and for the benefit of the Partnership Defendants and for their secret benefit and account; that H & R would act as the undisclosed agent for said partnership. That at all times herein mentioned the Partnership Defendants were in fact partners and all contracts and agreements were executed by defendant H & R in its own name but on behalf of and for the benefit and account of said partnership and that H & R was the undisclosed agent for said partnership and Partnership Defendants."

[2] The contracts and bonds thereon are referred to in the evidence as:

| | |
|---|---|
| (1) Sauers | (5) Normandale |
| (2) Woodrich | (6) Excelsior |
| (3) Waseca | (7) Shakopee |
| (4) Waseca | (8) Lummus |

When the case was called for trial, a pretrial conference was requested and granted. As a result and during trial, the action against the State of Minnesota was dismissed. The action against Woodrich Construction Company was eliminated by stipulation. The action against George T. Ryan was dismissed.

The trial, consuming some fifty days, was directed almost entirely at the partnership or joint venture, which plaintiff contends was secretly entered into between H & R and the Nelsons. Their agreements, relating to contracts, equipment and financing, made a part of the complaint, evidence and record of the instant case, together with their acts and conduct in relation to the faithful carrying out of the work contracted for by H & R, constitute the keystone to liability or nonliability of the plaintiff and the Nelsons.

Summarizing the facts, it is conceded that Rohr first met the Nelsons in March, 1952. Rohr was 40 years of age, and his education was limited to high school and a year and a half of college. He had 20 years' experience as a machine operator and work having to do with dirt removal and construction. He was not a graduate engineer. During this period he had occasionally engaged plaintiff as a surety on his contracts. H & R was a family corporation. Rohr controlled it. He had no known capital. He would hire an engineer, have him figure on a job, and then by some "abracadabra" of his own thinking, reduce the price by, say 12%, and that would be the bid on the particular job he sought.

At the time of the Rohr-Nelson meeting in 1952, the Nelsons were a father-son combination, doing a finance and motor vehicle business in St. Paul. The father was about 60 years of age and the son 26, at the time of trial. The father started out with a business school education, making him a first rate stenographer. The son obtained a degree from the University of Minnesota where he studied accounting. He had kept books for his father since he was 14 years of age. The father had been in his line of business since 1919, and as an incident thereto he bought and sold heavy equipment, such as Rohr would find useful in the business of H & R.

Rohr very likely impressed the Nelsons at their first meeting as a "go-getter" type of contractor. The Nelsons had some experience in Rohr's line of work by reason of a joint venture project in which they engaged in 1950 with A. J. Tschida and Howard Prodger. Rohr and the Nelsons at this meeting talked of heavy dirt-moving equipment supplied by A. J. Tschida in the Tschida-Nelson joint venture. A week later they met again and discussed possibilities of H & R renting equipment from the Nelsons for purposes thought mutually profitable. They met again on March 16 or 17, 1952, and from time to time up to April 1, 1954, and executed the agreements attached to the complaint, providing for financing by the Nelsons of the jobs undertaken by H & R, for the purpose of paying debts incurred and lending credit, as well as to induce the bonding required for the carrying on of the work under the various contracts, for a division of profits and losses,[3] and renting or purchasing of equipment.

The Nelsons kept the books and checked out funds required to meet current and past due debts of H & R. The funds of H & R and the Nelsons were commingled. They occasionally would accompany Rohr on trips to Hibbing, Minnesota, and Baraga, Michigan, seeking new jobs and at times jointly visiting the sites of various jobs in progress.

Plaintiff asserts the Nelsons were silent partners of H & R. The Nelsons introduced correspondence of plaintiff indicating knowledge of the alleged partnership by plaintiff.[4]

---

3. Exhibits 73 and 75 (A and C of complaint) are in evidence, and they, together with Exhibits E, F, H, K, M, O and R, are attached to the complaint.

4. See defendants' exhibit Q. Plaintiff's local agent wrote its home office referring to "Harry Nelson * * * the silent partner [of H & R]". The agent

The bizarre result of the close cooperation of Rohr and H & R on the one hand and the Nelsons on the other when the harvest appeared plentiful, and their subsequent inability to recall cause and effect of substantial losses arising out of their mutually beneficial association in the H & R enterprises of the instant case, can only be equaled by the naive approach to the entangling alliance by the plaintiff.

It was the Nelson "practice to control the funds of any contract in which [they had] a financial interest as much as [they] possibly could, and * * * the depositing of [such] funds" consistent with that practice, developed in the Nelsons' method of doing business previously with other contractors[5], was the basis for the system of accounting adopted in the rather fast and loose relationship between H & R and the Nelsons. To illustrate a few oddities arising out of this unusual association, consider the following:

The Nelsons commingled H & R contract money with theirs;

Rohr was not authorized to withdraw funds from the common account;

The Nelsons lent credit to H & R and kept its books;

The Nelsons conferred frequently with Rohr about H & R jobs;

The Nelsons visited H & R jobs involved herein;

The Nelsons wrote H & R's insurance and authorized H & R purchases;

The Nelsons assisted in preparation of H & R bids;

The Nelsons took no profits or rentals out of H & R jobs;

Rohr received wages as a machine operator;

The Nelsons used H & R shops, facilities and parts for their own use.

The foregoing will suffice as an approach to consideration of the issues involved.

Plaintiff contends H & R and the Nelsons are partners or joint venturers, and as such must respond in damages by contribution to liability under the bonds. The Nelsons contend that they were not in a partnership or joint venture with H & R; that at most they were a financial backer of H & R and that H & R is indebted to their Investment Company in the amount they claim.

The testimony of Rohr and the Nelsons is not entirely satisfactory. Speaking almost entirely from memory Rohr at times is inconsistent and unsure. The testimony of defendant H. C. Nelson (the obvious proprietor of H. C. Nelson Investment Company) is dependent upon his uncertain memory of too many of the essential facts in the case, and, with his peculiar method of accounting and frequent resort to organization affairs in the bookkeeping and recollection of his son, is suggestive of error, convenient forgetfulness and evasion. The defendant Sidney A. Nelson, the heir-apparent of H. C. Nelson, demonstrates that he has been methodical throughout. In every situation created by H. C. Nelson and difficult to explain, he, as the keeper of accounts and records for H & R time and again came to the rescue of his father. He had a plausible explanation, for instance, of the use of valuable H & R equipment by the Nelsons as collateral for a loan in dealing with the First National Bank of St. Paul.

There is one phase of the case that Rohr and the Nelsons agreed upon at trial, and that was to the effect that they did not intend a partnership relation between them. Were they a partnership or engaged in a joint venture? Was Rohr working for the Nelsons? Were the Nelsons nothing more than financiers for H & R? Were the Nelsons the creditor and H & R the debtor for money loaned and equipment rented? Those are some of the questions presented by a voluminous record.

testified at the trial that by this he meant "financial backer."

5. Harold Angel, Tony Hartman and Howard Prodger.

■■ ˙ The law of Minnesota controls this diversity case. A partnership agreement or a joint adventure having in general the legal incidents of a partnership may very well arise out of agreements between parties to combine their money, skill and efforts towards the accomplishment of a mutually profitable enterprise. It is, of course, essential that the parties jointly contribute thereto in the sense of putting into it something in the nature of property, services, conduct or investment tending to constitute a community of interest. If the contract of partnership results, it is no longer executory. It is executed, and the statute of frauds does not apply. Hammel v. Feigh, 143 Minn. 115, 173 N.W. 570.

21 Minnesota Statutes Annotated, paragraph 323.06, provides in part as follows:

> "In determining whether a partnership exists, these rules shall apply:
>
> \* \* \* \* \* \*
>
> "(4) The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business, \* \* \*."

■■ Except in rare cases where the evidence is conclusive, the issue as to whether or not a partnership exists is a question of fact. In determining that fact question the trial court must consider all of the evidence having to do with the acts and conduct of the alleged partners for the reason that a partnership may be the legal result of an agreement notwithstanding an expressed intention to the contrary. It is the substance and not the name or form of the relationship that constitutes the legal relationship of the contracting parties. Randall Co. v. Briggs, 189 Minn. 175, 248 N.W. 752; Bakke v. Keller, 220 Minn. 383, 19 N.W.2d 803; Hansen v. Adent, 238 Minn. 540, 57 N.W.2d 681. What transpired, as reflected in the record of the instant case, was the creation between H & R and the Nelsons of a partnership or joint adventure in praesenti. Swanson v. Lindstrom, 151 Minn. 19, 185 N. W. 950.

The Nelsons contend that after the plaintiff learned of their position as silent partners it continued to deal with H & R alone and thereby waived its rights of reimbursement, exoneration and subrogation against them. They also contend that all of the losses occurred on jobs bonded after this waiver was in effect. The result of these two propositions, if accepted, would be to relieve them of any liability to the plaintiff.

■ It is true that when a contracting party knows of the existence of a partnership and chooses to deal exclusively with one of the partners and to look to him alone, he may not thereafter have recourse to the other partners for performance of the contract because he will be held to the election he made at the time of contracting. In Gay v. Kelley, 109 Minn. 101, 123 N.W. 295, 297, 26 L.R.A.,N.S., 742, it was said:

> "\* \* \* if an agent at the time of the making of a contract discloses the name of his principal, and the contract is then made with the agent alone, the person making the contract cannot maintain an action upon it against the principal."

Did the plaintiff, after it realized or suspected that the Nelsons were silent partners of H & R, choose to deal exclusively with H & R and to look to it alone for liability on the bond? Did the plaintiff thereafter contract with H & R alone? The evidence that it did is the fact that the bond applications continued to be signed by H & R by its president, H. H. Rohr. The Nelsons apparently contend that this fact is conclusive evidence of a waiver by the plaintiff of its rights against them. In most jurisdictions, however, this fact is merely one of the circumstances to be considered, and parol evidence may be introduced to show a different intention.

Mechem on Agency, 2nd Edition, Section 1423, says:

> "\* \* \* by the weight of authority at least, as has been seen, the fact that the other party with knowledge of both principal and

agent, enters into a written contract, in which the agent alone is named as a party, is not conclusive of his intention not to hold the principal also."

■ The leading case is the English case of Calder v. Dobell, L.R. 6 C.P. 486. In this country the leading case adopting the rule of Calder v. Dobell is Byington v. Simpson, 134 Mass. 169, 45 Am.Rep. 314. Most of the American cases and the Restatement adopt it. Restatement of Agency, section 149. No Minnesota case to the contrary has been cited and I have found none. While the Minnesota Supreme Court has not yet adopted the majority rule, there is little doubt but that it will. See Saunders v. Commercial Credit Trust, 192 Minn. 272, 256 N.W. 142; Curtis v. Northwestern Bedding Co., 121 Minn. 288, 141 N.W. 161. This majority rule permits the introduction of parol evidence to prove that a party other than the party whose name appears on the contract is also liable on the contract as a partner or principal of the party signing it, but it does not permit such evidence to be introduced for the purpose of showing that such other party is liable on the contract instead of the party whose name appears thereon. Hence, the Minnesota cases involving this latter situation are not in conflict with the majority rule.

■ The fact that the bond applications continued to be signed by just one of the partners and not in the partnership name after the plaintiff realized or suspected that the Nelsons were partners of H & R is, therefore, just one of the facts to be considered in deciding whether the plaintiff chose to deal exclusively with H & R and to look to it alone for liability on the bond. Against this fact must be weighed the fact that H & R and H. H. Rohr were not financially reliable. Mechem, supra, section 1422. This circumstance was known to the plaintiff. In view of this fact it is unreasonable to suppose that the plaintiff in accepting H & R's signature alone intended to waive its rights against the silent partners who were financially re-liable and who were the only parties the plaintiff could look to for reimbursement. If there had been some reason why the plaintiff might be willing to waive its rights against the Nelsons, that reason and the omission of all reference to the partnership in the written contract would be some evidence of a waiver. In the absence of such a reason and in view of the weighty advantage in holding the Nelsons to their liability, it is probable that the parties continued to omit any reference to the partnership because they found it convenient to do so and not because the plaintiff intended to waive its rights against the Nelsons. It was perhaps logical to omit reference to the partnership because the existence of a partnership was not definitely established at that time. The plaintiff may have merely suspected that they were partners, and they themselves were intent on keeping it secret and on denying its existence. For these reasons the Court concludes that the plaintiff did not waive its rights against the Nelsons by accepting bond applications that were not in the partnership name.

After the plaintiff realized or suspected that the Nelsons' position was superior or greater than that of third parties financing H & R and that they were probably silent partners of H & R, it continued the arrangement of issuing the bonds only after H. C. Nelson executed the usual contracts providing for the advance of money to H & R and for the furnishing of equipment to it on each of the jobs. This does not establish, as defendants' counsel contend, that the plaintiff intended that these contracts should fix all rights as between them and that the plaintiff did not look to them for anything else and relied solely on H & R's liability on the bond. It is much more likely that the plaintiff continued to ask for these contracts before issuing a bond as a precautionary measure because the partnership's existence was not definitely established and did not intend that they should constitute the extent of the Nelsons' liability if it developed that they were partners of H & R.

Defendants cite the Uniform Partnership Act, 21 Minnesota Statutes Annotated, section 323.08, which provides in part that:

"Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership * * *,"

and also the case of Heenan v. Nash, 8 Minn. 407, Gil. 363, in which it was held that a bill of exchange drawn on a partnership and accepted by a partner in his own name and not in the partnership name was not binding on the firm. It is true that a partnership cannot be bound on a negotiable instrument unless its name appears on the instrument. Negotiable instruments are an exception to the majority rule stated above, but, of course, no negotiable instrument is involved in this case. As regards M. S.A. § 323.08, it is clear that it does not exclude partnership liability on a contract made by a partner in his own name for the benefit of the firm. Bowman & Steadman v. Farmers' State Bank of Pine River, 168 Minn. 221, 209 N.W. 863; Kavalaris v. Cordalis, 219 Minn. 442, 18 N.W.2d 137.

Defendants' counsel argue that the plaintiff by virtue of the statute of frauds, 30 Minnesota Statutes Annotated, § 513.01, subsection 2, could not have been charged as a surety of the Nelsons and that, therefore, the Nelsons were not principals of the plaintiff. Counsel errs in saying that the plaintiff is not chargeable as the surety of the Nelsons. The statute of frauds is clearly satisfied as regards the parties whose names appear on the bond, and as we have seen, parol evidence is admissible to show that a party signing a contract was acting as an agent and that another party is also liable on the contract as a principal. Such additional party, not disclosed in the written instrument, may enforce it as well as be liable on it regardless of the fact that the contract is required by the statute of frauds to be in writing. Accord, Davidson v. Hurty, 116 Minn. 280, 133 N.W. 862, 863, 39 L.R.A.,N.S., 324; Kohagen-Mendenhall Co. v. Joyce, 221 Minn. 83, 21 N.W.2d 232.

Defendants further contend that the following conduct of the plaintiff constituted a release of their liability:

(1) failure to ask for relief of any sort against H. H. Rohr individually;

(2) consenting to Rohr's appropriation of in excess of $20,000 in machinery and money belonging to H & R;

(3) failing to enforce its rights generally against H & R, the individual indemnitor, and Contractors Equipment Co., a transferee of assets of H & R in fraud of creditors.

They state further that:

"Plaintiff cannot permit, much less encourage, the substantial defalcations by one of its alleged debtors and assume to be compensated by the other in an amount which includes the sums so dissipated by Rohr."

The Court is not of the opinion that the plaintiff encouraged or permitted the dissipation of any partnership assets or of any separate assets of H & R by H. H. Rohr. The Court is also of the opinion that the facts do not warrant the finding of a release. The basis for finding a release that existed in the case of Wm. Lindeke Land Co. v. Kalman, 190 Minn. 601, 252 N.W. 650, 93 A.L.R. 1393, cited by defendants, is certainly not present in this case.

It is the opinion of the Court, therefore, that H. C. Nelson and Sidney A. Nelson are jointly and severally liable with H & R, and H. H. Rohr as co-principals on each of the bonds written by the plaintiff.

As regards the disputes between the partners H. C. Nelson and Sidney A. Nelson on the one hand and H & R on the other and their respective rights and

liabilities, it is the decision of the Court that:

1. The three LaPlante Choate motor scrapers, model TS–300 and one HD–19 Allis-Chalmers tractor, leased by the Nelsons to H & R for $7,500 per month, were purchased by the latter corporation under the rental-purchase agreement. This equipment was purchased with partnership funds and for partnership purposes. The purchase price was $85,000. The evidence preponderates in favor of the conclusion that when this amount had been credited to the Nelsons on the partnership books, H & R exercised its option to purchase. At that time the Nelsons and H & R became co-owners of this equipment as tenants in partnership.

2. The Nelsons received payment for the above-named equipment at least by the end of the Excelsior job. The rentals were credited to them as they were earned on each of the jobs. Instead of withdrawing them in cash and using them for other purposes, they chose to contribute them to the partnership business either as an advance or as capital. The Nelsons had control of the amount of the purchase price and exercised that control by risking that money in further partnership ventures. That constituted payment to them. The result is that $85,000 is due them from the partnership as a return of a partner's contribution but not as a debt to a creditor and, therefore, it is clear that the plaintiff is not liable to the Nelsons for this amount.

3. By leaving the rentals due them in the partnership business, the Nelsons fulfilled their contractual obligation of advancing $10,000 ($15,000 on the Woodrich and $10,000 on the two Waseca jobs) for each of the jobs except the Shakopee and Lummus jobs. It is doubtful that the Nelsons, who controlled the partnership funds, made this amount available for these two jobs.

4. The Nelsons failed to fulfill their contractual obligation to furnish all the equipment that was necessary for the Shakopee and Lummus jobs. They have requested reformation of the contracts on the last four jobs, so as to omit the clause requiring them to furnish "all equipment which will be needed to satisfactorily complete the work", but the requirements for reformation are not satisfied in this case.

5. The Nelsons failed to account properly for partnership funds and at times used such funds in their separate business and at times dealt with H & R equipment and partnership equipment as though it were their separate property.

6. Nelsons' failure to fulfill their obligations was partly responsible for the breakdown of the Shakopee and Lummus jobs.

7. The Nelsons are not entitled to have the agreements providing for the sharing of losses equally reformed so as to omit the loss-sharing provision because the requirements for reformation have not been satisfied.

8. The Nelsons' claim that cash disbursed by them exceeded cash received by them in the amount of $10,207.39 is not substantiated by the evidence. The evidence indicates that cash disbursements made by the Nelsons exceeded their cash receipts by only $2,761.75.

9. The $2,350 due the Nelsons for the Reo truck, the International truck and a parts trailer was apparently not withdrawn by them but was left in the partnership business. This amount is due them not as an unpaid creditor of the partnership but as a return of capital.

10. No consideration was given to H & R for the Northwest Dragline and the bill of sale of this piece of equipment to the Nelsons was not executed as part payment for equipment rental due them but rather because this piece of equipment had already been mortgaged by the Nelsons to the Minnesota State Bank for a loan to Sidney Nelson, and they needed the title in their name. The bill of sale is to be cancelled, and H & R is declared to be the owner of this equipment subject, however, to the rights of the plaintiff therein as set forth below.

11. The proceeds of the sale of the Wooldridge scraper, serial No. 1079, now held by plaintiff's counsel, are to be divided between the Nelsons and the plaintiff. $2,900 thereof is due the Nelsons, and the remaining $600 is due to the plaintiff.

12. The evidence does not establish that the Ward Bros. turnadozer for which the Nelsons claim damages for conversion is owned by them. The other turnadozer which was purchased from Morris and Knutson was owned by H & R and not by the Nelsons.

Borchert-Ingersoll, Inc., held two HD-19 tractors, Nos. 2525 and 1381, claiming liens thereon. By agreement of the parties this equipment and a dozer blade were sold for $10,000. The proceeds of the sale less $500 expenses of sale have been deposited with the registry of the court. $2,782.50 thereof is due Borchert-Ingersoll in satisfaction of its liens, and $1,000 is due the plaintiff from the sale of the dozer blade. The Nelsons claim the remainder of the proceeds. They are entitled to $4500 thereof in satisfaction of their chattel mortgage on tractor No. 1381. Tractor No. 2525 is the HD-19 tractor purchased from the Nelsons under the rental purchase agreement. The proceeds of its sale are a partnership asset and are subject to the rights of the plaintiff.

As regards the claims of certain materialmen against the plaintiff, it is the further decision of the Court that:

1. The claim of the Rocket Transfer Co. for services performed at the Lummus job be disallowed. The performance bond issued by the plaintiff for that job was not conditioned on the payment of all laborers and materialmen. Rocket's failure to file a mechanics' lien means that it is not a third party beneficiary of this bond. Crow & Crow, Inc., v. St. Paul-Mercury Indemnity Co., 247 Minn. 426, 77 N.W.2d 429. H & R and the Nelsons are liable for this claim, and to them claimant must look for payment.

2. The claims of the J. V. Gleason Co. and the Armco Drainage and Metal Prod-

ucts Co. for furnishing certain materials to the Lummus job be denied for the same reason that the claim of the Rocket Transfer Co. is denied. H & R and the Nelsons are liable for these claims.

3. The claim of the Rocket Transfer Co. for services performed on the Shakopee job be allowed in the amount of $1,784.21 plus interest. This sum will be added to the amount due the plaintiff from the principals on the bond.

4. The claim of the Wm. H. Ziegler Co., Inc. (which holds an assignment from Robert Wilson who performed services on the Shakopee job) be allowed in the amount of $1,245 plus interest. This amount will be added to the amount due plaintiff from the principals on the bond.

The plaintiff claims to be entitled to rental from H & R and the Nelsons for the use on the Lummus job of three LaPlante Choate 200 motor scrapers in the amount of $13,750. The testimony substantiates this claim, and it is allowed.

The counterclaim of the Nelsons against the plaintiff for damages for the conversion of one Northwest dragline, one turnadozer, serial No. CA 12461/671 RA63-Dozer No. DA631, three LaPlante Choate motor scrapers, models TS-300, two turnapulls, model C-11, a one-half interest in a TD-40 tractor with boom, and one Wooldridge scraper, serial no. 1079, is denied. As has been explained above, some of this equipment was not owned by the Nelsons. The rest of it was subject to clause six of the bond application according to which each principal on the bond:

"* * * hereby assigns, transfers, and conveys to the Surety, the Seaboard Surety Company, all right, title and interest * * * in and to all supplies, tools, plant, equipment, and materials (whether completely manufactured or not) wherever located which are now or may hereafter be purchased, used or acquired for use, entirely or partly, in the performance of said contract, * * *"

and according to which the principals:

"* * * hereby authorize and empower the Surety, its authorized

agents or attorneys, to enter upon and take possession of said supplies, tools, plant, equipment, materials and subcontracts, and enforce, use and enjoy the title thereto and the possession thereof in the event of any default * * * in the performance of the contract hereinabove referred to, failure * * * to promptly pay, satisfy and discharge any and all obligations which might constitute possible claim under the bond, or breach of the terms of this agreement."

In accordance with the provisions of clause six set forth in the previous paragraph, the plaintiff is decreed the owner of all right, title and interest of H & R and the Nelsons in and to the following equipment located in the Foster Excavating Company's yard at 78th and France, Minneapolis, Minnesota: one Northwest dragline shovel, model No. 25, serial No. 10499; one turnadozer, engine serial No. CA12461/671RA63, and dozer No. DA631; one Allis-Chalmers HD–19 tractor, serial No. 1368; three LaPlante Choate motor scrapers with serial Nos. T300–309, T300–307 and T300–551; one 1947 Reo truck, serial No. 18B36854, model No. 446; one 1949 International truck, serial No. 42319; miscellaneous repair parts; one parts trailer, one Onan electric light plant; one International TD–40 caterpillar crawler tractor with boom.

In accordance with the provisions of clause seven of the bond application the plaintiff is declared to be the owner of all the unpaid contract balances remaining due on the eight jobs including the final estimate and any amount recovered on the disputed claim presently being asserted by H & R for the benefit of the plaintiff in connection with the Woodrich contract.

The plaintiff may submit findings of fact, conclusions of law, order for judgment and form of judgment consistent with this opinion.

Exceptions are allowed.